**Wheeling.**

THE TRUSTEES OF BROOKE ACADEMY v. GEORGE,

EX'R *et al.*

Decided December 14, 1878.

Peter Curran by the 17th clause of his will bequeathed all the residue of his estate, after the payment of certain bequests, to the Virginia Literary Fund; and he died in 1861. The Legislature of the restored government of Virginia, on December 20, 1862, passed an act, by which they appropriated this residuary fund to the Brooke Academy, which was essentially a private educational institution, though incorporated by an act of the Legislature of Virginia, passed January 10, 1799. HELD:

*1878
Special Term.*

That the act of December 20, 1862, so far as it attempts to make this appropriation of this residuary fund, is unconstitutional, null and void.

Appeal from and *supersedeas* to a decree of the circuit court of Brooke county, rendered on the 9th day of February, 1878, in a cause in chancery in said court then pending, wherein the Trustees of Brooke Academy were plaintiffs, and Samuel George, executor of the last will of Peter Curran, and others were defendants, allowed on the petition of the said plaintiffs.

Hon. Thayer Melvin, judge of the first judicial circuit, rendered the decree appealed from.

1878
Special Term.

Trustees of
Brooke Acade-
my v.
George, Ex'r,
et al.

GREEN, PRESIDENT, furnishes the following statement of the case.

On January 10, 1799, the Legislature of the State of Virginia passed an act, whereby certain gentlemen were incorporated by the name of the "Trustees of Brooke Academy." See Henning's Statutes at Large, Continued, vol. 2d, p. 169, ch. 42. By this act there were conferred on them the usual powers conferred on private corporations, such as, to sue and be sued, to acquire and dispose of property, to make by-laws and regulations for the government of the academy, to elect a president, secretary and treasurer, and to receive subscriptions for the purpose of erecting the academy, and to collect the same or any moneys due them therefor or from its treasurer by motion, and fill vacancies in their body. These were all the powers conferred by this act on this corporation; and no duties were by it imposed on them.

On December 20, 1862, the Legislature of West Virginia, at Wheeling, passed the following act, see Acts of 1862-3, p. 7, ch. 5:

"*Be it enacted by the General Assembly of Virginia*: That all the residuary fund of the estate of Peter Curran late of Brooke county, deceased, under his last will and testament devised to the Literary Fund of Virginia is hereby appropriated to Brooke Academy in the county of Brooke and the executors of said last will and testament are hereby directed and required to pay to said Brooke Academy all money or other property, which may or shall come to their hands or possession as, or in the nature of, a residuary fund of said estate, and which under and according to the provisions of said will is payable to the Literary Fund of Virginia.

"2. That Brooke Academy shall have all the rights, liberties and powers relative to said residuary fund, that the said Literary Fund of Virginia would have had, had this act not passed; and to this end may sue for and recover the same, and by all due process of law and chan-

1878
Special Term.

Trustees of
Brooke Acade-
my v.
George, Ex'r,
et al.

cery may enforce all discoveries and settlements of executorial accounts deemed necessary.

"3. The Brooke Academy shall have, and is hereby invested with, full power to sell and convey all real estate, at present owned by it; and any deed for this purpose shall be sufficient, when signed and acknowledged by the president of the board of trustees of said Brooke Academy.

"4. That Adam Kuhn and Joseph Gist are hereby made and constituted as trustees of said Brooke Academy in addition to the four trustees thereof appointed by act passed on the 6th day of February, 1862.

"5. This act shall be in force from its passage."

Peter Curran referred to in this act died January 3, 1861. His will was dated November 24, 1860. At the January term, 1861, of the county court of Brooke county this will was proved and admitted to record; and Samuel George and Jeremiah Dunlevy qualified as executors of this will, and at the February term, 1861, of said court John Ervin the third executor named in this will qualified. On July 28, 1862, he presented to said court his resignation of this office of executor, and it was accepted; and at the same time the court required of Samuel George, the only resident executor, bond with good security in the penalty of $80,000.00; and thereupon such bond was executed by him with Louis Applegate, Joseph Applegate, James Palmer and Thomas Buchanan as his sureties. An appraisment of the estate in Virginia was made and returned to the March term, 1861, of this court. It was appraised at $47,370.53. Samuel George, one of the executors, of Peter Curran, made five ex parte settlements of his executorial accounts, the last of which shows a balance due from him on May 12, 1869, of $11,019.51.

The will of Peter Curran contains many provisions, and imposes many duties on his executors, not necessary to be stated. It makes specific bequests of money which aggregate some $26,400.00, besides some small specific

1878
Special Term.

Trustees of
Brooke Acade-
my v.
George, Ex'r,.
et al.

bequests of property; and it authorizes the executors to sell all his real estate not devised.

The 17th clause of this will is in these words: "17th. I bequeath to the Virginia Literary Fund all the residue of my estate of whatever kind after paying all the foregoing bequests." The testator was but little indebted.

On the 30th of September, 1872, the trustees of Brooke Academy instituted a chancery suit in the circuit court of Brooke county against Samuel George, executor of Peter Curran, and his four sureties before named. The bill alleges all the facts above stated; it surcharges and falsifies in specified particulars, the *ex parte* settlements of Samuel George, executor of Peter Curran, and charges him with certain acts as such executor, which, it alleges, were a breach of his duty and resulted in loss to the estate, with which he should be charged. They claim to be the residuary legatees of Peter Curran by virtue of this seventeenth clause of his will and the act of the Virginia Legislature of December 20, 1862; and they pray "that a complete account of the transactions of Samuel George, executor of the will of Peter Curran, deceased, may be taken under the direction of the court; that the accounts filed by said executor may be surcharged and falsified in the particulars named and otherwise; that the executor be compelled to discover what real estate of Peter Curran lying in the States of Iowa, Illinois, Ohio and Pennsylvania came to the hands of the executor, and the disposition made thereof, and the price realized; that said executor and the defendants, his sureties, may be held responsible for any waste of the estate growing out of the sale of the 'Curran Building' in the town of Wellsburg in Brooke county; that the Curran estate may be fully and completely settled, and the amounts due the plaintiffs, as residuary legatees, be fully ascertained and determined, and the same be decreed to be paid to the plaintiffs by said executor and his sureties; and for general relief."

1878
Special Term.

Trustees of
Brooke Acade-
my v.
George, Ex'r,
et al.

To this bill the defendants on September 10, 1877, filed this demurrer :

"The defendants demur to the bill of complainants for the causes below assigned :

"1st. That under the will of Peter Curran, deceased, marked Exhibit "A," the plaintiffs are neither a legatee or devisee, nor are they invested with any interest whatever in the said estate.

"2d. That the said act first named in plaintiffs' bill, passed by the Legislature of the State of Virginia, December 20, 1862, is unconstitutional, null and void.

"3d. The Literary Fund of the State of Virginia was and is an incorporation, incorporated by the State of Virginia, and funds belonging thereto, either by gift or devise, could not be taken therefrom, as prescribed by act of the Legislature of the State of Virginia, passed December 20, 1862.

"4th. That it was the intention and design of the testator that only the income arising from the fund bequeathed to the Literary Fund of the State of Virginia should be used by the board of said Fund.

"5th. That at and long after the passage of the act of December 20, 1862, the bequest was not due and payable, and the State of Virginia could make no appropriation thereof until the same became due and payable unto the Virginia Literary Fund, or was constructively in their possession, or in the State Treasury.

"6th. That under eleventh clause of said will, Exhibit "A," the legacy to the Virginia Literary Fund is not due till a period of twenty years from the death of the testator, and there is still a period of four years intervening before the same is due.

"7th. That under the seventeenth clause of the will the legacy to the Virginia Literary Fund is not due and payable.

"8th. That this Court has not jurisdiction in this cause until the expiration of the twenty years aforesaid, or until the conditions of the eleventh and eighteenth clauses

1878
Special Term.

Trustees of
Brooke Acade-
my v.
George, Ex'r,
et al.

are reported by the executor to the proper court as having been complied with.

"9th. That the bill does not make John Ervin and Jeremiah Dunlevy defendants to their suit.

"10th. That the plaintiff has not legal capacity to maintain this suit.

"11th. That suits for bequests to the Literary Fund, or appropriations therefrom by the Legislature, are cognizable at law and not in equity.

"12th. That by the laws of the State of Virginia in force at the execution of said will and the death of the testator, the said bequest not having been taken by the Virginia Literary Fund, the said bequest, if valid as a gift to said legatee, became the property of trustees, to be held by them for the purposes of the bequest, and was not thereafter subject to disposal by the Legislature of the State of Virginia, as claimed by the act of December 20, 1862.

"13th. That under the laws of the State of Virginia, the Legislature having attempted by said act to appropriate the bequest made by the testator to the Literary Fund to purposes other than those intended by the testator, the fund so bequeathed reverts to the heirs of the donor as if no such bequest had been made.

"14th. That plaintiffs' bill does not allege that payment has been made of legacies preceding that to the Virginia Literary Fund, nor does it allege a sale of the real estate mentioned in the clause of the will and authorized to be held twenty years from the death of the testator.

"15th. That under the tenth clause of the will, the legacy to the Virginia Literary Fund is not due until the children therein named attain the age of twenty-one years, and the bill does not allege that it is are due or has been paid.

"16th. That the bill does not allege that all the legacies preceding that to the Virginia Literary Fund have been paid.

1878
Special Term.

Trustees of
Brooke Acade-
my v.
George, Ex'r,
et al.

"17th. And for other causes.

"18th. The said legacy to said Virginia Literary Fund named in said seventeenth clause of said will being null and void, the said plaintiff has no claim or right to said legacy; but the same, if any, belongs to the heirs of said testator, he having died intestate, as to the *residuum* of said estate.

"19th. Because at the date, execution and probate of said last will there was not any corporation, company or person, whether incorporated or not incorporated, as *the Virginia Literary Fund.*

"20th. That the bequest to the Virginia Literary Fund in said will named is null and void for uncertainty and for other reasons."

The court on February 9, 1878, rendered the following decree:

This cause now coming on to be heard upon the demurrer heretofore filed by the defendants to the complainants' bill, the court doth sustain said demurrer, upon the grounds that the act of the Legislature of the State of Virginia, passed December 20, 1862, attempting to vest in the complainants the title to the residuary fund of the estate of Peter Curran, deceased, and authorizing them to sue for and collect the same, is invalid and of no effect, and gave the complainants no right to maintain this suit, without deciding upon any of the other grounds of demurrer raised.

From this decree the trustees of Brooke Academy obtained an appeal and *supersedeas* from this court on May 4, 1878.

*R. G. Barr*, for appellants, relied on the following authorities:

Acts 1862, ch. 5; Cooley Const. Lim. 87, 89 93, 126, 129; 6 W. Va. 574; 8 W. Va. 622; 15 N. Y. 543; Acts Va. 1819-20, ch. 12; Code Va. 1849, ch. 78, 79, 80, side notes; Code Va. 1860, ch. 78, 79, 80, side notes; 1 Redf. Wills 406, 433; Perry Trusts 45; 2 Call 72; 2

1878
Special Term.

Trustees of
Brooke Acade-
my v.
George, Ex'r,
et al.

W. Va. 54; 1 Ves. Jr. 270; 3 Beav. 174; 2 Ves. Jr. 639; 8 Ves. 380; 4 Ired. Ch. 1; 2 John. & H. 766; 2 Ves. Jr. 235; 10 Ves. 536; 12 Gratt. 196; Perry Trusts, §§707, 716, 717, *et seq.*; 3 W. Va. 597; 30 Conn. 113; 25 Grat. 109; *Id.* 599; 14 Allen 539; 20 Gratt. 133.

*G. W. Caldwell,* for appellees.

GREEN, PRESIDENT, delivered the opinion of the Court:

The views I entertain of this case render it unnecessary for me to express any opinion in reference to any of the twenty causes of demurrer assigned by the defendants, except the second of these causes, "that the act of the Virginia Legislature of December 20, 1862, is unconstitutional, null and void." And except so far as the decision of this point may involve an expression of opinion necessary on some other causes of demurrer alleged, it would be improper to express any opinion, as the expression of such opinion is unnecessary, and as the "Board of the Literary Fund" or its successor, and the heirs and distributees of Peter Curran, the parties really interested in these questions, are not before this Court.

It is argued by the appellants' counsel, that the seventeenth clause of Peter Curran's will, which is in these words: "I bequeath to the Virginia Literary Fund, all the residue of my estate of whatever kind, after paying all the foregoing bequests," is a bequest to "The Board of the Literary Fund;" that this corporation was composed only of officers of the State; that it was simply an agency of the State; and therefore a bequest to it was a bequest to the State; that this bequest, by virtue of the second, third and eighth sections of chapter 80 of the Code of Virginia of 1860, page 419, was valid; and as the donor or testator prescribed no uses to be made of this bequest, he thereby left it to the discretion of the Legislature to dispose of it in any manner in which it

1878
Special Term.

Trustees of
Brooke Acade-
my v.
George, Ex'r,
et al.

could dispose of any other funds in the state treasury; and that the disposition made by the Legislature thereof by the act of December 20, 1862, which was a gift of it to the Brooke Academy, was such a disposition as the State could have made of other funds in the treasury, and it was therefore operative and valid.

This argument admits, that if the Legislature had no power or right to appropriate any funds in the treasury to the plaintiff, the trustees of the Brooke Academy, that they have no claim to the residuary fund of Peter Curran's estate. For according to this view the right of the Legislature to make this appropriation is the same as that to appropriate in like manner a fund in the treasury of the State raised by taxation.

We propose then to consider the question whether the Legislature of Virginia had a right to appropriate to the trustees of the Brooke Academy any fund in the treasury, which had been raised by taxation of the people of the State; for if they had not, then upon the grounds assumed by the plaintiffs' counsel they can have no legal claims to the residue of Peter Curran's estate.

It is true, that in creating a legislative department and conferring on it legislative power the people of Virginia must be understood to have conferred full and complete legislative power, to the extent that such power may be exercised by the governing power of any country, subject only to such restrictions as they saw fit to impose by their Constitution and such as are contained in the Constitution of the United States. And this being the case, a court cannot declare a statute unconstitutional and void solely on the grounds of its unjust and oppressive provisions, or because it is supposed to violate the natural, social or political rights of the citizen not guaranteed by the Constitution itself. Nor can they declare an act unconstitutional and void, because it appears to the minds of the judges to violate the fundamental principles of a republican government, not for-

1878
Special Term.

Trustees of
Brooke Acade-
my v.
George, Ex'r,
et al.

bidden by the Constitution itself to be violated. For a court cannot legitimately substitute its own judgment for that of the Legislature in any case properly within its power under the Constitution; and if it could set aside an act simply because the court believed it unjust or oppressive or in violation of the natural, social or political rights of citizens, or contrary to the fundamental principles of republican government, it would be impossible to set a limit to its authority, and its discretion alone would become the measure of the extent of its interference a discretion, which would vary with the peculiar notions of each individual judge. A statute therefore, before it can be declared void by the courts, must be clearly in violation of some provision of the Constitution of the State or of the United States.

But if a Legislature passes an act, which is not properly a statute, because not legislative in its character, such an act must be declared void by courts, because the Constitution has conferred on the Legislature only legislative power. No court for instance would hesitate to declare void an act, which enacted that A. and B., who were husband and wife to each other, should be so no longer, but A. should thereafter be the husband of C. and B. the wife of D., or which should enact that the homestead now owned by A. should be no longer his, but should henceforth be the property of B. See *Loan Association* v. *Topeka,* 20 Wall. 663. These would be despotic acts not legislative in their character; and therefore the power to pass such acts is not conferred by the Constitution on the Legislature. So an act of the Legislature donating the property of the State to an individual, or a private corporation, in disregard of the public interest is not legislative in its character, and should therefore be declared void by the courts. And so if the Legislature, instead of itself making such a donation, was to authorize a municipal corporation to make such a donation of the property of the municipality, such act would be equally void; and if it authorized a

1878
Special Term.

Trustees of
Brooke Acade-
my v.
George, Ex'r,
et al.

municipal corporation to levy a tax for the purpose of raising a fund to make such a donation, it would be equally clear, that such act would be void.

Thus it has been held, that the Legislature cannot authorize a town to pay bounties to persons, who have heretofore enlisted in the military service of the United States, or to pay the commutation required of individuals who have been drafted into such service, or to pay select men for costs and damages sustained by their resisting prosecutions brought against them for refusing to erase names from a check list of the voters for State and United States officers. See *Crowell* v. *Hopkinton*, 45 N. H. 9; *Freeland et al.* v. *Hasting et al.*, 10 Allen 570; *Moulton* v. *Inhabitants of Raymond*, 60 Me. 121; *Gore* v. *Epping*, 45 N. H. 539.

But it has been decided, that it is competent for the Legislature to authorize municipal corporations to raise money by taxation to pay bounties to volunteers, who may enlist in the military service of the United States, when by the law such volunteers are to be credited to the quota of such town. See *Brodhead et al.* v. *The City of Milwaukee et al.* 19 Wis. 658; *Booth* v. *Woodbury*, 32 Conn. 128; *Speer* v. *Blairsville*, 50 Penn. St. 150.

These cases may be perhaps sustained, on the ground that the taxation authorized was not in order to raise money for a mere *private* purpose. It is admitted that the Legislature can not authorize a tax to be levied for any mere *private* purpose. But it is contended, that such bounties are not mere private donations in disregard of the public interest; but that they are made to relieve the town from a heavy public burden of furnishing its quota of persons for military service; and that the interest of every inhabitant of such town is promoted by the giving of such bounties, as thereby every inhabitant is relieved from the risk of being compelled to render military service by the lot falling on him; and thus this bounty is not a mere gift but is money paid for a valuable consideration, and is therefore a contribution from the public treasury for a general good.

1878
Special Term.

Trustees of
Brooke Acade-
my v.
George Ex'r,
et al.

It is true the judges, who delivered the opinion of the court in these cases, do not base those decisions on this ground only, but lay down principles, which would justify such donations in cases in which the public good was not thus promoted. But much of their reasoning is not, as we shall see, sustained by the authorities; nor has it been followed in other cases by themselves always. The strong approbation felt by these judges and by the community generally for such particular laws may have induced the judges to sustain them not only by showing them to be consistent with what are perhaps sound principles, but to go further and to sustain them by unsound reasoning and laying down principles of law, which cannot be sustained and have not been followed in other cases.

It is obvious, that a mere donation to a private corporation, whether made by the Legislature directly or by a municipal corporation by the authority of the Legislature, must be regarded precisely as would a donation to a private individual. In either case the act of the Legislature must be held to be void, as not legislative in its character. Thus it has been held, that the Legislature cannot authorize a town to either donate public funds of the town or lend its credit to private persons or corporations in consideration of their establishing a manufactory in the town. See *Allen* v. *Inhabitants of Jay*; *Loan Association* v. *Topeka*, 20 Wall. 665. This last case was cited approvingly in the case of *Ohio Valley Iron Works* v. *The Town of Moundsville*, 11 W. Va. 1.

The Supreme Court of the United States in *Loan Association* v. *Topeka* say: "We have established beyond cavil there can be no lawful tax, which is not laid for a *public purpose*. It may not be easy to draw the line in all cases so as to decide what is a public purpose in this sense, and what is not. It is undoubtedly the duty of the Legislature, which imposes or authorizes a municipality to impose a tax, to see that it is not to be used for purposes of private in-

1878
Special Term.

Trustees of
Brooke Acade-
my v.
George, Ex'r,
et al

terest instead of a public use; and the courts can only be justified in interposing, when a violation of this principle is clear and the reason for their interference cogent. But in the case before us, in which the towns are authorized to contribute aid by way of taxation to any class of manufacturers, there is no difficulty in holding that this is not a public purpose. If it be said, that a benefit results to the local public of a town by establishing manufactories, the same may be said of any other business or pursuit which employs capital or labor. The merchant, the mechanic, the innkeeper, the banker, the builder, the steamboat owner are equally promoters of the public good, and equally deserving the aid of the citizens by forced contributions. No line can be drawn in favor of the manufacturer, which would not open the coffers of the public treasury to the importunities of two-thirds of the business men of the city or town."

Shortly after the disastrous fire in Boston a statute was passed authorizing the city to issue its bonds to an amount not exceeding $20,000,000.00, which bonds were to be loaned under proper guards to the the owners of the grounds, whose buildings had been destroyed, to aid them in rebuilding. Though it was obvious, that great benefit might in this indirect manner result to the city of Boston in the speedy rebuilding of the burnt district, yet the Supreme Court of Massachusetts held this act of the Legislature null and void. See *Lowell* v. *City of Boston*, 111 Mass. 454.

It is true that a decided preponderance of authority is to be found in favor of the authority of the Legislatures of the States to confer upon municipal corporations the right to subscribe to the stock of railroad companies or to lend them their credit. But able jurists have held, and still hold, that the Legislatures have no power to confer such authority.

The cases on this subject are very numerous; but the views of those opposed to the validity of acts of the Legislature conferring such authority, are well presented

1878
Special Term.

Trustees of
Brooke Acade-
my v.
George, Ex'r,
et al.

in the cases of *Whiting* v. *The Sheboygan and Fond du Lac Railroad Co. et al.*, 25 Wis. 167, and *Hanson et al.* v. *Vernon et al.* 27 Iowa 28; and the views of those, who sustain the validity of these laws, are strongly stated in *Sharpless* v. *The Mayor &c.*, 21 Pa. 147.

The Supreme Court of the United States in *Loan Association* v. *Topeka*, 20 Wall. 661, in commenting on these decisions say: "In all these cases however the decision has turned upon the question whether the taxation, by which this aid was to be afforded to the building of railroads, was for a *public* purpose. Those, who came to the conclusion that it was, held the laws for that purpose valid. Those, who could not reach that conclusion, held them void. In all the controversies this has been the turning point of the judgment of the courts. And it is safe to say, that no court has held debts created in aid of railroad companies, by counties or towns valid, on any other ground than that the purpose, for which the taxes were levied, was a public use, a purpose or object which it was the right and duty of the State governments to assist by moneys raised from the people by taxation.

"The argument in opposition to this power has been, that railroads built by corporations organized mainly for purposes of gain, the roads which when built being under their control and not that of the State, were private and not public roads; and the tax assessed on the people went to swell the profits of individuals, and not to the good of the State, or the benefit of the public, except in a remote and collateral way.

"On the other hand it was said, that roads, canals, bridges, navigable streams and other highways had in all times been matters of public concern; that such channels of trade and of the carrying business had always been established, improved, regulated by the State; and that the railroad had not lost this character because constructed by individual enterprise aggregated into a corporation.

1878
Special Term.

Trustees of
Brooke Acade-
my v.
George, Ex'r,
et al.

"We are not prepared to say, that the latter view is not the true one, especially as there are other characteristics of a public nature conferred on these corporations, such as the power to obtain the right of way, their subjection to the laws which govern common carriers, and the like, which seem to justify the propositions. Of the disastrous consequences, which have followed its recognition by the courts, and which were predicted when first established, there can be no doubt."

For these reasons I concur in the view, that unless restricted by some special provisions of its Constitution a State Legislature under the general grant of legislative power could furnish aid to a railroad company ; for in so doing the taxation necessary to give such aid is laid for a public purpose. The Constitution of our State evidently takes this view of railroads ; for they are by section 9, article III of our Constitution declared *public* highways. The Acts of 1872-3, p. 37. But there are provisions in our Constitution, not necessary to be now pointed out, which affect the question of aid that may be furnished railroad companies. I concur therefore in the conclusion reached by the Supreme Court of Pennsylvania in the case of *Sharpless* v. *The Mayor of Philadelphia*, 21 Pa. St. 147, that an act of the Legislature authorizing a subscription of a city to the stock of a railroad corporation is constitutional and valid, under the grant of general legislative power in a State Constitution ; but with a portion of the reasoning of the Court in that case I cannot concur, it being in opposition to the authorities I have cited, and the views I have expressed.

It seems to me clear, that a donation by a Legislature, or by a municipal corporation by its authority, to a private school, whether unincorporated or corporated, can not be brought within the principles, which would justify such donation in aid of a railroad company. Such a donation on the contrary comes clearly within the reason which forbids such donation to a manufactory, whether unincorporated or corporated. It was so expressly de-

54

1887
Special Term.

Trustees of
Brooke Acade-
my v.
George, Ex'r,
et al.

cided in the case of *Curtis adm'r* v. *Whipple et al.*, 24 Wis. 350.

By an act of the Legislature of Wisconsin the town. of Jefferson was authorized to raise by tax $5,000.00 to aid in the erection of buildings for the 'Jefferson Liberal Institute' in said town. This law was pronounced void by the Supreme Court of that State, because it was not legislative in its character.

Dixon, C. J., in delivering the opinion of the court says: "The counsel for the plaintiff correctly states the effect of the act of incorporation (Pr. & Local Laws of 1866 ch. 516), when they say the 'Jefferson Liberal Institute,' for the benefit of which the taxes in question were attempted to be assessed and collected, is essentially a private educational institution, controlled exclusively by the stockholders through a board of trustees. The town of Jefferson is not a stockholder and has no voice in its management. The tax-payers in the town, as such, are not stockholders, and have no privileges in the school, that are not common to all the people of this or any other State. The trustees may exclude any or all the citizens of the town from the institution. The money when collected is to be paid to the treasurer of the institution; and the town is not secured the right to. see or know, that it is expended for the purposes for which it was collected. Under these circumstances we feel no doubt, that the act under which the proceedings to levy are justified, is unconstitutional and void.

"It strikes us 'at the first blush' that this is not the collection of money for public purposes, as clearly as if the institute were not an incorporated body, but a mere association of private individuals resolved upon the establishment of a like institution.

"If it were such an institution, or a grammar or classical school, or a seminary built up and established by individual enterprise, as by persons engaged in the profession of teaching, or by others, and owned and controlled by others contributing towards it, and the emoluments, be-

1878
Special Term.

Trustees of
Brooke Acade-
my v
George, Ex'r,
et al.

longing to them, we apprehend that no one would contend, that the people of Jefferson might be taxed for the purpose of donating the money to it. The fact, that it is an institution incorporated by the act of the Legislature, does not change its character in this respect.

"It is but a most frivolous pretext for giving to a corporation, when there is no certain and definite responsibility, money exacted from the tax-payers, which a just and honorable man engaged in the same business would hesitate to receive though paid without opposition, and to enforce the payment of which he would never think of resorting to coercive measures, provided the same were lawful.

"It can no more be supported by taxation, than if it were unincorporated, or a private school or seminary of the kind above supposed. Nor will the location of the institution at Jefferson, and the incidental benefits which may arise to the people of the town, sustain the tax. That is not the kind of public benefit and interest, which will authorize a resort to the power of taxation. Such benefits accrue to the people of all communities from the exercise in their midst of any useful trade or employment, and the argument, pursued to its logical result, would prove that compulsory payment, or taxation, might be made use of for the purpose of building up and sustaining every such trade or employment, though carried on by private persons for private ends, or the purposes of mere individual gain and emolument.

"That there exists in the State no power to tax for such purposes, is a proposition too plain to admit of controversy. Such a power would be obviously incompatible with the rights and institutions of a free people; and the practice of all liberal governments, as well as all judicial authority, is against it. If we turn to the cases where taxation has been sustained as in pursuance of this power, we shall find in every one of them that there was some direct advantage accruing to the public from the outlay, either by its being the owner or part owner of the

1878
Special Term.

Trustees of
Brooke Acade-
my v.
George, Ex'r,
et al.

property, or thing, to be created or obtained with the money, or the party immediately interested in and benefited by the work, the same being matters of public concern; or because the proceeds of the tax were to be expended in defraying the legitimate expenses of the government, and in promoting the peace, good order and welfare of society. Any direct public benefit or interest of this nature, no matter how slight, as distinguished from those public benefits, or interests, incidentally arising from the employment, or business, of private individuals or corporations, will undoubtedly sustain a tax."

In so much of the opinion of Chief Justice Dixon, as I have quoted above, I fully concur; and it seems to me in entire accord with the authorities I have cited; but I submit, that it is difficult to reconcile them with their views and reasoning in the case of *Brodhead* v. *The City of Milwaukie, et al.*, 19 Wis. 686.

Chief Justice Dixon there says: "Counsel on both sides accept as correct the principles as laid down in the great leading case of *Sharpless* v. *The Mayor of Philadelphia*, 21 Pa. St. 147, upon the subject of taxation. The same principles have frequently been affirmed by this Court. The Legislature cannot create a public debt, or levy a tax, or authorize a municipal corporation to do so, in order to raise funds for a mere private purpose. It cannot in the form of a tax take the money of the citizens and give it to an individual, the public interest and welfare being in no way connected with the transaction. The object, for which money is raised by taxation, must be public, and such as to subserve the common interest and well being of the community required to contribute. *To justify the court in arresting the proceedings and declaring the tax void, the absence of all possible public interest must be clear and palpable. So clear and palpable as to be perceptible by every mind at the first blush.* In addition to these I understand, that it is not denied, that claims founded in equity and justice in the largest

1878
Special Term.

Trustees of
Brooke Acade-
my v.
George, Ex'r,
et al.

sense of the terms, or in gratitude, or charity, will support a tax. Such is the language of the authorities."

If we give to this language, and especially that portion I have italicised, the ordinary signification of such language, it would be difficult to concieve a case where the courts would not hold a legislative donation of public funds valid. For it can hardly be imagined that a Legislature would donate public funds, where it was apparent at the first blush to everybody, that in making the donation they could not have been actuated either by motives of charity, or equity and justice in its largest sense, or by a feeling of gratitude, or by some *possible* benefit to the public either direct or indirect. It seems to me, however selfish or corrupt such a donation by the Legislature of public funds might be, some mind could nevertheless conceive, that the Legislature was actuated by some of the above motives, or that some possible indirect benefit might accrue to the public. In fact the possession of funds by any person is itself of some indirect advantage to the community, in which he lives ; and if so, this would itself suffice to require of the courts to hold, that any legislative donation of funds to a resident of the State was valid, if these views were correct. Language equally strong with that above italicised was used in the case of *Booth* v. *The Town of Woodbury*, 32 Conn. 128 ; but it is unsustained by the weight of the authorities, as the cases I have cited plainly show.

Paine, Justice, in his dissenting opinion in the case of *Curtis, adm'r* v. *Whipple et al.* points out the inconsistency in Chief Justice Dixon's views as above stated. After quoting that portion of his former opinion, which I have italicised, he says : " If such language were to be applied without qualification, it would most certainly sustain the tax in this case, and also in many other cases, in which in the opinion of the chief justice it is claimed to be very clear that a tax could not be sustained."

It remains to apply the law as above stated to the case before us. The charter of the Brooke Academy, as set

1878
Special Term.

Trustees of
Brooke Acade-
my v.
George, Ex'r,
et al.

forth in the statement of this case, shows clearly, that it is a private educational institution controlled exclusively by its board of trustees. The State of Virginia was not a stockholder in the corporation and had no voice in the management. The taxpayers of the State, as such, were not stockholders; and the citizens of the State of Virginia had no privileges in the Brooke Academy, that were not common to the people of Ohio and Pennsylvania or those of any other State. The trustees of the Brooke Academy might exclude any and all citizens of Virginia from having any control of the institution or from even sending their children to the Academy. The trustees of the Brooke Academy by this act of the 20th of December, 1862, are to recover the whole of this large residuary fund of Peter Curran's estate, which was, they say, the property of the State; but the State of Virginia is in no manner secured the right to see or know that it is expended for educational purposes at all. There is no legal obligation on the trustees of Brooke Academy to have a school taught at all. The very act which makes to them this large donation of funds, claimed by them to have belonged to the State, expressly provides, that they may sell all their real estate, and that the signature of their president alone to a deed may convey away all their real estate. This provision would seem to have been intended to make clear the right of the trustees to control everything connected with their business in any manner they chose. This right they always had; but in providing that they might sell all their real estate, the attention of the Legislature was called to the fact, that the trustees of the Brooke Academy were under no obligation to have an academy kept at all. The Legislature had just as much right to give this $30,000.00 or $40,000.00, claimed by the appellant to belong to the State, to any individual teacher in the State without even requiring him to keep a school, as to make this donation to the trustees of Brooke Academy. It was not an act legislative in its character; and the power to pass such act

was therefore never conferred on the Legislature. This donation was made for no public purpose, but for one which was merely private. We have no doubt, that the 1st and 2d section of the act of the Legislature passed December 20, 1862, entitled "an act to appropriate the residuary fund under the last will and testament of Peter Curran, deceased, to Brooke Academy" is unconstitutional and void.

The decree of the circuit court, which we are reviewing, while it decides the only principle necessary to be decided in order to dispose of the causes, makes no order in reference to the payment of the costs in the suit; and therefore this cause must be remanded to the circuit court.

The decree of the circuit court of February 9, 1878, must therefore be approved and affirmed; the appellees must recover of the appellants their costs expended in this court and $30.00 damages; and this cause must be remanded to the circuit court of Brooke county to be further proceeded with according to the rules and principles governing courts of equity.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED.  CAUSE REMANDED.