DEMOVILLE & CO. v. DAVIDSON COUNTY.

(*Nashville.* January 17, 1889.)

1. DRUGGISTS' RELIEF ACT. *Construction. County taxes. Judgments.*

Acts 1887, Ch. 89, releasing all druggists from liquor dealers' *privilege taxes* incurred by them under *Acts 1881 to 1886* inclusive, where the liquors were sold, in good faith, for medicinal uses only, operates to release such taxes, when due to counties, and also where suits were pending, or judgments had been rendered therefor at date of passage of Act.

Act construed: Acts 1887, Ch. 89.

2. SAME. *Constitutionality of Act. "Class legislation."*

That Act is not obnoxious to the constitutional prohibition against the passage of laws for benefit of individuals—"class legislation." The class provided for by the Act is a natural, not an arbitrary, one.

Constitution construed: Art. XI., § 8.

Case cited and approved: Davis *v.* State, 3 Lea, 380.

3. SAME. *Same. Retrospective laws.*

Nor to the constitutional prohibition against the passage of retrospective laws. The Legislature has the power, by a *general law retroactive in its operation*, to release *privilege taxes* due the State and counties.

Constitution construed: Art. I., § 20; Art. II., § 28.

Cases cited and approved: McEwen's Case, 5 Hum., 285; Kurth *v.* State, 86 Tenn., 134; 4 Watts & S., 401; 40 Ga., 416; 19 Ark., 308.

Cited and distinguished: State *v.* Burnett, 6 Heis., 186.

*Questions reserved:* As to validity of a special or partial law releasing a privilege tax, and of laws releasing property taxes.

4. SAME. *Same. Assumption of judicial powers by Legislature.*

Said Act, in directing dismissal of pending suits on stipulated conditions, operates alone upon the collecting officers and not upon the Courts; and is not, therefore, an unauthorized invasion of the province of the Courts by the Legislature.

Constitution construed: Art. II., §§ 1, 2.

Demoville & Co. *v.* Davidson County.

5. SAME.   *Same.   Obligation of contracts.*

    Said Act, in so far as it releases taxes due to counties, impairs the obligation of no contract—the rights of creditors of the counties not being involved.   The counties are only emanations from the State, and subject to its control in this respect.

    Constitution construed : Art. I., § 20.   .

    Case cited and approved : Luehrman *v.* Taxing District, 2 Lea, 425.

    Cited and distinguished : Nashville *v.* Towns, 5 Sneed, 186.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County.   ANDREW ALLISON, Ch.

The State and Davidson County had, prior to Act 1887, releasing druggists from liquor dealers' taxes, recovered decree in Supreme Court against complainants for such taxes, in consequence of sales of liquors made by them during the years 1881 to 1886, inclusive, under their druggist's license.

(See Druggists Cases, 86 Tenn., 449.)

Executions were issued on said decree and placed in the hands of the Sheriff of Davidson County. The complainants, relying upon said Act of 1887 as a release of their liability, filed their bill to enjoin said executions.

Issues were made up, and on complainants' demand were tried by a jury.   Verdict and judgment for complainants.   Defendants appealed.

EAST & FOGG and DEMOSS & MALONE for Complainants.

Attorney-General PICKLE, THOS. J. FREEMAN, and J. B. DANIEL for Defendants.

LURTON, J.   The material question arising upon this appeal involves the constitutionality of an Act of the Legislature passed March 9, 1887, entitled "An Act to relieve druggists of all taxes that have accrued against them as liquor dealers under the revenue laws of 1881–2, 1883–4, and 1885–6."
This Act is as follows:

"Section 1. *Be it enacted by the General Assembly of the State of Tennessee,* That all druggists in this State who have made themselves liable for taxes as liquor dealers under the revenue laws of 1881–2, 1883–4, and 1885–6, making them liquor dealers, and who were not in fact using the druggist's license as a blind, but were in good faith only selling the prohibited articles as medicine, be and they are hereby relieved of all liability for those years.

"Sec. 2. *Be it further enacted,* That in all cases falling under the provisions of the foregoing section, where suits have been brought and are now pending in any of the Courts, the same shall be dismissed at defendant's cost, and that defendants shall be liable for and pay all attorneys' fees due by the State for the institution and prosecution of

suits against druggists under the laws of 1881-2, 1883-4, and 1885-6.

"Sec. 3. *Be it further enacted*, That this Act take effect from and after its passage, the public welfare requiring it." Acts 1887, page 179.

The first objection urged is that the Act is in violation of Article II., Section 8, of the Constitution, which reads as follows:

"The Legislature shall have no power to suspend any general law for the benefit of any particular individuals inconsistent with the general laws of the land, nor to pass any law granting to any individual or individuals rights, privileges, immunities, or exemptions other than such as may be, by the same law, extended to any member of the community who may be able to bring himself within the provisions of such law."

This clause "does not prohibit legislation for the benefit of classes composed of any members of the community who may bring themselves within the class." *Davis* v. *State*, 3 Lea, 380.

But it is argued that all liquor dealers constitute a class, and that this Act singles out one portion of the class—to wit, druggists, who have sold for medicinal purposes only—and extends relief alone to them. But druggists are not liquor dealers in any true sense. It is a fact of common knowledge that the sale of liquors for medicinal purposes has, until very lately, been a recognized part of the ordinary and legitimate

business of a druggist, and permissible under the ordinary license of a merchant engaged in the drug business. If a druggist sold liquors as a beverage he became thereby, in fact as well as in law, a liquor dealer. The revenue laws of 1881–2, and subsequent years, were extended to druggists who sold liquors for other than sacramental uses. Thus druggists as a class, *eo nomine*, were required to pay the liquor dealer's privilege tax if they sold even for medical purposes. These Acts were construed and their validity passed upon in the Druggists' Tax Cases, reported in 1 Pickle, 449.

The Act now under consideration extends relief to all of this class who have made themselves liable to such tax for the years named therein, who have not, by the character of their sales, made themselves liquor dealers in fact—that is, the relief is extended to all of the class, druggists, who have sold for medicinal purposes only—while those who have sold as a beverage, and thereby become members of the "liquor dealer" class, are not relieved.

The class thus described by the Act form a natural and not an arbitrary class, and legislation with regard to this class is not for the benefit of individuals within the meaning of the Constitution. But it is said that the Act makes no provision for the return of the tax to such as have paid it, and that it is therefore partial. This might be dismissed with the suggestion that it does not appear that there are any such. But would this

be an objection to such an act? This liability, after it was incurred, became a debt due the State, and the relation of debtor and creditor existed. Can the State release or compromise with its debtors? Resolutions and Acts releasing bail bond for forfeitures, and compromising or releasing sureties upon the bonds of revenue and other officers, are not uncommon, and their validity has been unquestioned. That the power to settle, compromise, and even release a liability due to the State ought to exist somewhere is most obvious.

Concerning this power this Court, in McEwen's Case, reported in 5 Hum., 242, said:

"That the Legislature of the State, in the absence of constitutional prohibition, is the proper guardian and protector of its funds, no matter for what purpose appropriated, and that, as such, it is its duty to watch over them, to see that they are properly secured, vested, and applied as the law may direct, is a proposition so palpably in accordance with reason and necessity that it were a waste of time to enter into argument to prove it. It necessarily follows that, if these funds, or any portion of them, be out of the treasury and in the hands of a citizen, the power to collect, compromise, and arrange the same with the citizen belongs to the Legislature, to be exercised according to its best judgment for the security and prosperity of the State, and upon principles of right and justice to the citizen. This power on

the part of the Legislature is supreme, and it may be exercised by that body in its collective capacity, or it may be delegated to a commission, the decision of which, when made in pursuance of the power delegated, is equally final and conclusive." 5 Hum., 285.

The legislative power of the General Assembly of this State extends to every subject, except in so far as it is prohibited, either by the delegated powers of the Federal Government or by the restrictions of our own Constitution. *Davis* v. *State*, 3 Lea, 376.

He who would show the unconstitutionality of an Act of the Legislature must be able to put his finger upon the provision of the Constitution violated. That the power of compromising or releasing a liability may be abused is no answer to its existence. All human power is liable to abuse. The power of public opinion, the responsibility of legislators to their constituents, are likely to prevent any very great abuse of such power, and afford reasonable guarantees for its proper exercise. There is no clause of the Constitution which prohibits the Legislature from releasing any of its debtors, and indeed the learned counsel representing the State do not challenge its existence with regard to individual debtors. But they insist that its exercise must be restrained by the limitations contained in the Constitution requiring all legislation to be general. This argument, if sound,

might require the State, if it released one debtor, to release all in a similar situation. This is not reasonable, for it is conceded that the State may compromise with or release a single debtor without extending the same terms to other debtors on the same account.

Now, if the State may, by resolution or bill, compromise with or release one debtor, or the sureties upon a particular bond, why may it not include, in the same release, any number of debtors? If such an Act or resolution would be valid if the debtors relieved were named, why will it not be equally valid if those to whom relief is extended are by the Act so described as to constitute a class? We can see none. That the release is conditional upon the existence of certain facts, or upon acceptance of certain terms, such as are named in the second section of this Act where suit has been brought, is not at all objectionable. The second section is operative only upon the collecting officers of the State, and requires *them* to dismiss suits pending upon acceptance of the terms of the Act by the defendants. It contained no mandate to the Courts.

The case of the *State* v. *Burnett*, 6 Heis., 186, is relied upon by the Attorney-General. The Act considered in that case was one refunding to the tax payers of Roane County the State tax on property paid by them upon the assessment for 1864. The decision in that case was put upon the ground that the Act undertook "to donate to certain in-

dividuals in Roane County, out of the treasury of the State, the several amounts paid by them into the treasury in 1864, but confers no such benefit on the other individuals in other counties of the State who had made like payments."

The result reached in the case was right. The donation of a fund from the State's treasury is a very different proposition from the release of a liability to the State. The appropriation of public moneys to other than public purposes would be beyond the legislative power, and in a clear case might be restrained by the Courts. *Trustees of Bank Academy* v. *George*, 14 W. Va., 411; S. C., 35 Am. Rep., 760.

The case is to be distinguished from this in another respect. The tax refunded in that case was a property tax. The tax released in this case is a privilege tax. Article II., Section 28, of the Constitution requires that property taxation shall be equal and uniform, while there is no such express requirement as to privileges, which the same section declares may be taxed in such manner as the Legislature may from time to time direct. *Kurth* v. *State*, 2 Pickle, 134.

The refunding of a property tax to the people of one county would probably operate as unequal taxation. That case is in no aspect controlling as to the question now under consideration, for if the validity of an act releasing certain tax payers who have incurred liability for a privilege tax depends upon its applicability to all members of the com-

munity in a like situation—a question which we reserve—then the requirement is met in this case, for druggists selling liquors for medicinal purposes only form a natural and not an arbitrary class, wholly distinct from liquor dealers in any true or legal sense of the term. The Act is therefore not one for the benefit of individuals within the meaning of the Constitution.

That the act applies alone to past delinquencies, and has no prospective effect, does not make it retrospective legislation in the sense of the Constitution. All release acts or resolutions settling, compromising, or releasing liabilities due to the State are in one sense retrospective, but there can be no doubt that a State may pass such retroactive laws as only waive her own right without violating the Constitution. Black's Constitutional Prohibition, Sec. 221; *Davis* v. *Dawes*, 4 Watts & S., 401; *Lewis* v. *Turner*, 40 Georgia, 416; *Myers* v. *Byrne*, 19 Ark., 308.

That such a release act may have been unwise furnishes no reason for declaring it void. The policy of such legislation may be debatable, but the Legislature must settle all such questions under their responsibility to their constituents. The question as to this Court is one of legislative power. If this existed the act must stand. The operation of the act is obviously to release *all* who have made themselves liable by sales for medicinal uses. It does not, therefore, matter whether the liability has been reduced to judgment before the passage

of the Act or is still the subject of a pending suit. If the party liable chooses to rely upon the release, he may do so by injunction bill, as in this case, or by pleading it and offering to comply with the terms of the second section when suit was pending at passage of the Act.

Does the Act release the liability of complainant to Davidson County for this privilege tax? We think it does. The liability was incurred to both State and county under the same law and upon the same state of facts. The Act releases the class of citizens described in the Act from *all* liability incurred during certain years. The terms are comprehensive enough to embrace liability to the county as well as the State. The State may release a liability to the county for such a tax as well as it may release liability to itself. The county is but an emanation from the State. It does not exercise any power or franchise under any contract between itself and the State. The latter creates, and it may destroy. The State delegates the power of taxation, but it may withdraw such power, and itself assess taxes for municipal purposes. *Luehrman* v. *Taxing District of Shelby County*, 2 Lea, 425.

If the Legislature may wholly withdraw the taxing power from a county, it may release a tax assessed by the county. The greater power includes the less. There is no contract that the county shall be permitted to collect such a tax,

and no creditor's rights are involved in the case under consideration.

The case of *Nashville* v. *Towns*, 5 Sneed, 186, is not in point. The Legislature has no authority to authorize a county to levy a tax for any other than a county purpose (Article II., Section 29). Therefore an act authorizing the application of a county tax, assessed for county purposes, to be paid over to the city of Nashville to be used for city purposes, was void. This is all that was decided in that case. What is said about contract rights or vested rights is dictum.

The Act relied upon by complainants is valid, and the decree of the Chancellor affirmed, there being no error in his decree.