## MEMPHIS v. MEMPHIS CITY BANK.

### (*Jackson.* July 7, 1892.)

1. TAXATION. *Legislative power to exempt from taxation wanting under Constitution of 1870.*

The Legislature has not power, under the Constitution of 1870, to pass any law, general or special, original or amendatory, to confer upon corporations or individuals, or classes thereof, any exemptions from taxation, other than such as are expressly permitted by said Constitution, either by creating a new and original exemption for their benefit, or by extending and preserving the life of an existing lawful exemption under conditions and for purposes not contemplated in its creation. This result is reached by construction of the clauses of the Constitution of 1870 relating to taxation and to the creation of corporations. The rule was otherwise under the Constitution of 1834, its corresponding clauses being materially different. (*Post, pp. 583–589.*)

Constitution construed: Art. II., Sec. 28, Art. XI., Sec. 7 (1834); Art. II., Sec. 28, Art. XI., Sec. 8 (1870).

Cases cited and approved: Railroad v. Wilson County, 89 Tenn., 608; Ellis v. Railroad, 8 Bax., 530; Chattanooga v. Railroad, 7 Lea, 576; Railroad v. State, 8 Heis., 789; Franklin County v. Railroad, 12 Lea, 547; Railroad v. Gaines, 3 Tenn. Ch., 611; 141 La. Ann., 188.

Cases cited and distinguished: State v. Butler, 13 Lea, 406; State v. Butler, 86 Tenn., 620; 97 U. S., 147.

2. SAME. *Same.*

The conceded authority of the Legislature, under the Constitution of 1870, to increase the "powers" of existing corporations by general laws, does not include authority to confer upon such corporations an immunity from taxation. "Powers" does not include immunity from taxation. (*Post, pp. 589, 590.*)

Constitution construed: Art. XI., Sec. 8.

Cases cited and approved: Memphis v. Insurance Co., *ante*, p. 566; Wilson v. Gaines, 9 Bax., 546; Railroad v. Hamblen County, MS.,

Memphis *v.* Memphis City Bank.

Knoxville, 1877; Railroad *v.* Gaines, MS., Nashville, 1878; 102 U. S., 273; 103 U. S., 417; 97 U. S., 697; 93 U. S., 217; 130 U. S., 642.

3. SAME. *Construction of charter provision exempting from taxation.*

The shares of stock in a corporation are not liable for the tax imposed, nor protected by the immunity from taxation granted, by a clause in its charter providing "that there shall be levied a State tax of one-half of one per cent. upon the amount of capital stock actually paid in, to be collected in the same way and at the same time as other taxes are by law collected, which shall be in lieu of all other taxes." (*Post, pp. 577–579.*)

4. SAME. *Same.*

But the capital stock of the corporation alone is subject to the tax imposed and protected by the exemption granted by said provision. And the effect of said provision, if valid, is to protect the capital stock from all taxes, except that imposed by the charter, whether State, county, or municipal. (*Post, pp. 577–579.*)

Cases cited and approved: Union Bank *v.* State, 9 Yer., 490; Memphis *v.* Insurance Co., *ante*, p. 558.

5. SAME. *Exemption from taxation not transmissible.*

An insurance company was chartered prior to 1870. It possessed exemption from taxation. After the Constitution of 1870 went into effect, this insurance company was converted into a banking corporation by legislative permission. The legislation effecting this change not only changed the name of the old corporation, and invested it with new powers, but provided that the new corporation should enjoy "any franchise, right, power, privilege, or immunity" possessed by the former corporation.

*Held:* The immunity from taxation did not pass. The power to transfer this immunity is equivalent to the power to create it, and both are prohibited under Constitution of 1870. (*Post, pp. 580–592.*)

Act construed: Acts 1887, Ch. 190.

Cases cited and approved: Bank *v.* Memphis, 6 Bax., 415; Bank *v.* McGowan, 6 Lea, 705; 104 U. S., 493.

6. CORPORATIONS. *Construction of charter of insurance company.*

An insurance company, chartered, organized, and operated as such, has not banking powers authorizing it to conduct the business of a bank, although its charter provides "that said corporation shall be capable in law  *  *  *  of receiving in trust, from any person, money, jewels, plate, or other valuable thing." (*Post, pp. 593, 594.*)

---

Memphis *v.* Memphis City Bank.

---

7. SAME. *Capital stock and shares of stock are separate properties.*

The capital stock of a corporation and its shares of stock are distinct taxable properties. The taxation or exemption of one is not taxation or exemption of the other. (*Post, p. 578.*)

Cases cited and approved: Memphis *v.* Bank, *ante*, p. 546; Memphis *v.* Insurance Co., *ante*, p. 558; Wilson *v.* Gaines, 9 Bax., 551; Gas-light Co. *v.* Nashville, 8 Lea, 406; Union Bank *v.* State, 9 Yer., 490; Street Railroad Co. *v.* Morrow, 87 Tenn., 406; 95 U. S., 687; 117 U. S., 135; 119 U. S., 277.

8. CONSTITUTIONAL LAW. *Rule of construction.*

In construction of the Constitution every clause should be given effect. The language of one clause should not be pressed so far as to annul another clause. (*Post, p. 586.*)

Cases cited and approved: McKinney *v.* Hotel Co., 12 Heis., 116; Memphis *v.* Water Co., 5 Heis., 495.

9. SAME. *Charter exemptions are inviolable contracts.*

Charter exemptions from taxation granted prior to 1870 constitute contracts that the State cannot impair by legislation or otherwise. (*Post, p. 578.*)

Cases cited and approved: Memphis *v.* Bank, *ante*, p. 546; Memphis *v.* Insurance Co., *ante*, p. 558; Memphis *v.* Insurance Co., 6 Bax., 527; Nashville *v.* Thomas, 5 Cold., 600.

10. SAME. *Same. Construction of charter exemptions.*

Charter exemptions from taxation are never allowed unless expressed in language so plain and unmistakable as to leave no reasonable doubt of the legislative intent to create them. (*Post, pp. 579, 580.*)

Cases cited and approved: Memphis *v.* Bank, *ante*, p. 546; Memphis *v.* Insurance Co., *ante*, p. 558; Wilson *v.* Gaines, 9 Bax., 551; State *v.* Butler, 13 Lea, 406; 16 How., 435; 18 Wall., 498; 95 U. S., 686; 117 U. S., 136, 148; 109 U. S., 398; 143 U. S., 195.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. J. S. GALLOWAY, Probate Judge, sitting by interchange.

F. T. EDMONDSON and METCALF & WALKER for Memphis.

FRAYSER & SCRUGGS and TAYLOR & CARROLL for Bank.

CALDWELL, J.   The State brought this bill, on behalf of the city of Memphis, to recover from the Memphis City Bank and from its stockholders, respectively, certain *ad valorem* taxes alleged to be due on capital stock and on shares of stock.

The bill was dismissed on demurrer, and complainant appealed.

The main defense is made upon the seventeenth section of the charter of the Memphis City Fire and· General Insurance Company, of which defendants claim the full benefit, and by which they contend that both capital stock and shares of stock are exempt from all taxation, except that prescribed therein.

The language of that provision, so far as material to this contention, is as follows: *"Be it further enacted*, That there shall be levied a State tax of one-half of one per cent. upon the amount of capital stock actually paid in, to be collected in the same way and at the same time as other taxes are by law collected, which shall be in lieu of all other taxes and assessments."

The tax here prescribed is the pecuniary consideration to be paid by the corporation to the State for the franchises granted.   It is expressly

37—7 P

laid upon the *capital stock*, and is intended, obviously, to "be in lieu of all other taxes and assessments" on that subject of taxation. No additional tax can lawfully be laid upon capital stock, whether in favor of State, county, or municipality. The charter is binding not only upon the State, but also upon county and municipality, which are but agencies of the State in administering the affairs of government; it is a contract whose obligation may not be violated by subsequent revenue laws or otherwise. *Union Bank* v. *The State*, 9 Yer., 490; *Memphis* v. *Union and Planters' Bank*, *ante*, p. 546; *Memphis* v. *Home Insurance Company*, *ante*, p. 558; *City of Memphis* v. *Hernando Insurance Company*, 6 Bax., 527; *Nashville* v. *Thomas*, 5 Cold., 600.

Whether the *shares of stock* are, by this charter, exempt from *ad valorem* taxation is a totally different question; for capital stock and shares of stock are distinct subjects of taxation. The assessment or exemption of the one is not the assessment or exemption of the other. *Memphis* v. *Union and Planters' Bank*, *ante*, p. 546; *Memphis* v. *Home Insurance Company*, *ante*, p. 558; 9 Yer., 490; 6 Bax., 553; 8 Lea, 406; 3 Pickle, 406; 95 U. S., 687; 117 U. S., 135; 119 U. S., 277; Cooley on Taxation, 231.

The charter tax of "one-half of one per cent. upon the amount of *capital stock* actually paid in" is, therefore, not a tax upon *shares of stock;* nor is the exemption of capital stock from further taxation an exemption of shares of stock.

That the charter tax is laid exclusively upon capital stock is too manifest to admit of debate, and, to our minds, it is equally clear that the words, "which shall be in lieu of all other taxes and assessments," refer alone to the same subject of taxation. But the one subject of taxation is mentioned. Hence, it would be illogical to give the exemption greater scope. The exemption contemplated followed in the legislative mind as a proper result from the tax imposed. The property protected from *further burden* is that upon which the *specific burden* is already imposed. The *shares of stock* are not liable for the charter tax; they are not embraced in the charter exemption; they are subject to taxation as other non-exempt property of the same kind.

If the taxability of shares of stock were left in doubt by the words of the charter, the doubt should be resolved in favor of the State. He who claims exemption from the common burden of taxation, must justify his claim by the clearest grant from the State. Every presumption is against any surrender of the taxing power, and the State must be held to have the power of assessing all property, taxable under the Constitution, unless by authorized grant, in words too plain to be mistaken, an intention to surrender that power is manifested. *Memphis* v. *Union and Planters' Bank*, ante, p. 546; *Memphis* v. *Home Insurance Company*, ante, p. 558; 9 Bax., 551; 13 Lea, 406; 16 Howard, 435; 18 Wallace, 498; 95 U. S., 686;

117 U. S., 136; *Ib.*, 148; 109 U. S., 398; 143 U. S. 195.

The language of the charters considered in *Union Bank* v. *The State*, 9 Yer., 460, and in *Memphis* v. *Home Insurance Company*, *ante*, p. 558, is, in legal effect, the same as that here involved, and in each of those cases it was decided that capital stock was exempt from further taxation, but that the shares of stock were subject to assessment as other non-exempt property of the same kind.

The only difference worthy of mention here, lies in the fact that the words, "which shall be in lieu of all other taxes and assessments," appearing in this charter, are not found in the charters construed in those cases, and that difference is unimportant, being one of language merely and not of legal import. In those cases exemption of capital stock from all other taxation arose by necessary *implication* from the fact that the Legislature, in the charter, laid a prescribed tax upon that subject of taxation; while in this case the exemption, there *implied,* is *expressed* by the words, "which shall be in lieu of all other taxes and assessments." There the exemption followed as a legal result; here the same legal result is expressed in so many words, without adding any thing to the legal import of the charter.

Thus far this opinion has proceeded upon the assumption that defendants are entitled to the full benefit of the seventeenth section of the charter of the Memphis City Fire and General Insurance

Company, as they claim to be. Whether they are in reality so entitled remains to be considered.

That company was chartered January 24, 1870. By the twelfth section of the charter it is provided "that the said corporation shall be capable in law    *    *    *    of *receiving in trust*, from any person, money, jewels, plate, or other valuable thing."

On March 26, 1887, the Legislature passed "An Act to define the powers of corporations," as follows :

"SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee*, First, that any company incorporated under the laws of this State, *having, by its charter, the right to receive moneys in trust* or otherwise, shall be held to have, and shall have, the power, after the passage of this Act, to receive deposits, and loan the same and its capital on any kind of commercial or business paper or real estate, buy and sell exchange, and all kinds of public or private securities and commercial paper. Second, that the exercise of any of the foregoing powers by any corporation created or incorporated or chartered under the laws of this State, shall not operate to forfeit or affect any franchise, right, power, privilege, or immunity granted to such corporation in and by its charter." Acts 1887, Ch. 190, Sec. 1.

On January 22, 1889, another Act was passed, by the first section of which the name of the " Memphis City Fire and General Insurance Com-

pany" was changed to "Memphis City Bank;" and by the second section of which it was enacted "that such change of name, as provided for in the first section of this Act, shall not operate to forfeit, affect, or abridge any franchise, right, power, privilege, or immunity granted to said corporation by its original charter."

Complainant alleges, and defendants by their demurrer admit, that the Memphis City Fire and General Insurance Company was organized under its charter, and was engaged in a general insurance business until the passage of the foregoing Act, by which its name was changed; and that thereafter it abandoned the business of insurance, and employed its capital in a general banking business, in which it is still engaged.

Upon these facts the question arises whether or not the Memphis City Bank is entitled to *any* immunity from taxation by virtue of the seventeenth section of the original charter hereinbefore construed.

In the absence of the Acts of 1887 and 1889, it is clear that no such immunity would exist; for, by the diversion of the capital stock from the business of insurance, and its employment in a banking business, it would cease to be within the protection of the original charter. *DeSoto Bank* v. *Memphis,* 6 Bax., 415; *Bank of Commerce* v. *McGowan,* 6 Lea, 705; *Bank* v. *Tennessee,* 104 U. S., 493.

Then, what is the legal effect of those Acts?

A mere change of name, without a change of business, would make no difference whatever in the matter of taxation and exemption. 97 U. S., 147; 2 Pickle, 615. A change of business and transfer of corporate rights, privileges, and immunities, by legislative authority, has, several times by this Court, been held to carry with it the same immunity from taxation enjoyed in the original business. *State* v. *Butler*, 13 Lea, 406; *State* v. *Butler*, 2 Pickle, 620.

But those decisions were made with respect to changes accomplished under legislation prior to the Constitution of 1870. This leads to a comparative consideration of corresponding provisions of the Constitutions of 1834 and 1870. If such changes might be made, and the immunity preserved to the corporation in its new business under the former Constitution, as has been seen, may the same thing be done under the latter?

In answering this inquiry, it must be kept in mind that the *State* Legislature is omnipotent in matters of legislation, except as to subjects with respect to which its powers are restricted by the organic law.

Section 7, Art. XI., Constitution of 1834, is as follows:

"The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals, inconsistent with the general laws of the land; nor to pass any law granting to any individual

or individuals rights, privileges, immunities, or ex-
emptions other than such as may be, by the same
law, extended to any member of the community
who may be able to bring himself within the pro-
visions of such law; *Provided always*, The Legis-
lature shall have power to grant such charters of
incorporation as they may deem expedient for the
public good."

It is perfectly clear that, if the negative por-
tion of this section stood alone, the Legislature
would have had no power to grant private char-
ters of incorporation, with or without immunities
or exemptions. But the inhibition of that portion
of the section was so far removed by the proviso
as to authorize the grant of such charters as the
Legislature might deem expedient for the public
good. By virtue of the proviso, it became com-
petent for the Legislature to charter insurance com-
panies, banks, etc., with such rights, privileges,
immunities, or exemptions as it might deem expe-
dient for the public good, and as might not be
in conflict with other positive provisions of the
Constitution; and, having power to grant immu-
nity from taxation to an insurance company or to
a bank, one or both, it follows that it had power
to authorize incorporators engaged in the one busi-
ness to abandon it and embark the same capital
in the other business with the same immunity.
Having power to create both, it was able to
transform one into the other.

This interpretation justifies the decisions referred

to, and, at the same time, makes no conflict with the revenue clause of the same Constitution. That clause is in these words: "All lands liable to taxation, held by deed, grant, or entry, town lots, bank stock, * * * and such other property as the Legislature may from time to time deem expedient, shall be taxable. All property shall be taxed according to its value; that value to be ascertained in such manner as the Legislature shall direct, so that the same shall be equal and uniform throughout the State. No one species of property from which a tax may be collected, shall be taxed higher than any other species of property of equal value." Const. 1834, Art. II., Sec. 28.

In this language can be found no imperative requirement that all property shall be *taxed*. Under it the Legislature might tax or omit to tax. The direction is, that certain property named in the first sentence, and such other property as the Legislature may deem expedient, "shall be *taxable*." The matter of taxation, not only as to the *amount* to be levied, but as to the *property* upon which to be levied, was left largely to the legislative discretion. Therefore, this provision was not violated by grants of immunity from taxation under the other provision. This construction is sustained by the reasoning of the Court in *Railroad Co.* v. *Hicks*, 9 Bax., 442.

Let us next consider the corresponding provisions of the Constitution of 1870. Section 8 of Art. XI. of that instrument is the same exactly as

Sec. 7 of Art. XI. of the Constitution of 1834 down to the proviso in the latter, and instead of that proviso, the Constitution of 1870 has the following sentence: "No corporation shall be created, or its powers increased or diminished by special laws, but the General Assembly shall provide by general laws for the organization of all corporations hereafter created, which laws may, at any time, be altered or repealed; and no such alteration or repeal shall interfere with or divest rights which have become vested."

There is some plausibility in the suggestion that this substituted language was intended to authorize the Legislature to do, by general law, what it could do before by special law; but this concession is made only in connection with the qualifying statement that, in both cases, the legislative discretion is subordinate to other positive provisions of the organic law, and that in neither could it be made effective, if exercised in conflict therewith.

Though the Legislature was empowered by the proviso of the seventh section of Art. XI. of the Constitution of 1834, to grant such charters of incorporation, by special laws, as it deemed expedient for the public good, it could not, under that authority, grant corporate "rights expressly forbidden by any other clause" of the same Constitution. *McKinney* v. *Hotel Co.*, 12 Heis., 116; *Memphis* v. *Memphis Water Co.*, 5 Heis., 495.

So it is, also, with reference to the Constitution of 1870. The whole instrument must be taken into

consideration, and no part so construed as to impair or destroy any other part. Legislative powers enumerated in one clause must be defined and exercised with reference to limitations and requirements made in other clauses.

With this fundamental rule of construction in view, and placing Sec. 8 of Art. XI. and Sec. 28 of Art. II., of the Constitution of 1870, in juxtaposition, the conclusion becomes irresistible that the framers of that instrument intended that the Legislature *should not*, thenceforth, have power to grant immunity from taxation, by general law or otherwise, to any new corporation, or to preserve an existing immunity to any old corporation in its change from one business to another fundamentally different. That power was taken away absolutely.

The latter section is as follows: "All property, real, personal, or mixed, *shall be taxed;* but the Legislature may except such as may be held by the State, by counties, cities, or towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary, or educational; and shall except one thousand dollars' worth of personal property in the hands of each taxpayer, and the direct product of the soil in the hands of the producer and his immediate vendee. All property shall be taxed according to its value, that value to be ascertained in such manner as the Legislature shall direct, so that taxes shall be equal and uniform throughout the State. No one

species of property from which a tax may be collected shall be taxed higher than any other species of property of the same value." Const. 1870, Art. II., Sec. 28.

Unlike the revenue clause of the Constitution of 1834, the requirement here is positive and imperative that all property, except that mentioned for exemption, *shall be taxed.* This provision comprehends the whole domain of taxation; and, in explicit terms, prescribes the maximum of exemptions, beyond which the Legislature may not go. It declares what property *may* be and what *shall* be excepted from taxation, and directs that all the rest *shall be taxed.* By that mandatory direction the Legislature is *prohibited* from making any other exemptions from taxation upon any ground or consideration whatever; "and if it attempt to do so, the effort is unavailing and void for want of legislative power." *Railway Co.* v. *Wilson County,* 5 Pickle, 608; *M. & C. R. R. Co.* v. *Gaines,* 3 Tenn. Ch., 611; *Ellis* v. *L. & N. R. R Co.,* 8 Bax., 530; *Chattanooga* v. *Railroad Co.,* 7 Lea, 576; 8 Heis., 789 and 796; 12 Lea, 547.

Such an immunity as that claimed by the defendants in this case not being embraced in that exception, and being within the prohibition, the Legislature has no power to grant it, either by original or amendatory enactment, however general in form and operation.

It has already been seen, upon abundant citation of authority, that capital stock and shares of stock

are *property.* They fall clearly within the constitutional requirement that *all property shall be taxed.* Hence, there is no legislative power to exempt them. As especially in point, we refer to *Bank of Shreveport* v. *Board of Assessments,* 141 La. Ann., 188.

Under the eighth section of Art. XI. of the present Constitution, the Legislature may, by general laws, provide for the organization of new corporations, and for the increase or diminution of the powers of old ones; but that is the limit. It cannot go further, and grant immunity from taxation, for that is forbidden by Sec. 28, Art. II., of the same instrument.

This construction gives full force to both provisions in letter and in spirit, and makes them perfectly harmonious; while a contrary construction would produce irreconcilable conflict, and, in reality, override and set at naught the latter provision by the former one. Such a result is forbidden by every sound rule of interpretation, and will not be sanctioned for a moment.

Again, it is competent for the Legislature, by general laws, to increase the *powers* of existing corporations, but that does not mean that it may grant immunity from taxation. An *increase of powers* does not include a grant of immunity from taxation. The word "powers" has not so wide a range, it is not so comprehensive in its scope, as the other words of the same section, "rights and privileges;" yet, these latter words do not em-

brace immunity from taxation. *Memphis* v. *Phœnix Fire and Marine Insurance Co.*, *ante*, p. 566; *E. T., Va. & Ga. R. R. Co.* v. *Hamblen County*, MS., Knoxville, 1877; *M. & C. R. R. Co.* v. *Gaines*, MS., Nashville, 1878; *Wilson* v. *Gaines*, 9 Bax., 546; *Railroad Company* v. *County of Hamblen*, 102 U. S., 273; *Wilson* v. *Gaines*, 103 U. S., 417; *Railroad Companies* v. *Gaines*, 97 U. S., 697; *Morgan* v. *Louisiana*, 93 U. S., 217; *Picard* v. *E. T., Va. & Ga. R. R. Co.*, 130 U. S., 642.

This, to our minds, is demonstration that the Legislature, since the adoption of the Constitution of 1870, has no power to *grant* or *enlarge* an immunity from taxation to any private corporation, even by general law, whether creative or amendatory. Then, may it *preserve* such an immunity to corporations created before that date, when, by subsequent legislative sanction, they divert their capital into channels not authorized by their original charters? Manifestly not. The lack of power to *preserve* the immunity for the new enterprise follows from the lack of power to *grant* it in the first instance. To *preserve* the immunity of an existing corporation in so radical a change as from an insurance to a banking business, the same measure of legislative power is requisite as in *granting* originally a similar immunity to independent incorporators desiring to enter upon a banking business upon subscriptions of money contributed for that purpose.

The only ground upon which immunity from

taxation can *now* be preserved to any corporation in this State, is that the charter granting it, when it was lawful so to do, is a contract whose obligation can no more be violated by constitutional amendment than by subsequent legislation.

Aside from the grant of corporate franchise, the legal import of the State's contract in the charter before us was that the *grantee*, the Memphis City Fire and General Insurance Company, should be protected against all taxation, except that expressly named, so long as it should employ its capital and its energies in the business of insurance, but no longer. There was no contract for immunity from taxation in any other business. The charter does not authorize the grantee to abandon the business of insurance and employ its capital in that of banking, as complainant alleges, and defendants by their demurrer admit, has been done. The State made no contract authorizing such a change, unless it did so by the Act of 1887. No authority for it is found in the original charter.

To justify a claim of immunity from taxation as a banking institution, it is indispensable, therefore, that a valid change in the original contract be shown to have been made; and in that change the State must have agreed expressly to two distinct propositions—(1) that the corporation might thereafter do a banking business, and (2) that in the latter business the corporation should have the same immunity enjoyed in the former. *Memphis* v. *Phœnix Fire and Marine Insurance Company, ante,* p. 566, and authorities cited.

To the second proposition the State has been powerless to yield assent since May 5, 1870, when the present Constitution was adopted. The Legislature, which alone could act for the State in such a matter, might have agreed, by general law, to the change of business, but it could not preserve the immunity.

It is competent for the Legislature to *increase the powers* of existing corporations by general laws, but it cannot preserve to them immunity from taxation, if, in availing themselves of their new powers, they divert their capital into new enterprises. It can no more preserve the immunity through such a change than it can extend the life of an expiring charter, and thereby preserve the immunity through another term. Either would be tantamount to granting an exemption originally. Hence both are forbidden.

The most that can properly be said in favor of corporations having immunity from taxation, when the Constitution of 1870 was adopted, is, that, so long as they pursue the business then authorized by their charters, they are entitled to the full benefit of that immunity, but if they embark their capital in any business not legitimately within the scope of their charters at that date, whether the diversion be with or without legislative sanction, it thereby becomes, while so employed, subject to taxation as other property of the same species.

Additionally, it is insisted for complainant that the Act of 1887 (Ch. 190), relied on by defendants,

can avail them nothing; that the, whole Act is void, because the subject of the bill was not expressed in the title, as required by Sec. 17, Art. II., of the Constitution.

We express no opinion on this question, as its decision is not necessary in this case.

It is contended for defendants that they are entitled to the immunity here claimed without reference to the Act of 1887. The proposition is that the Memphis City Fire and General Insurance Company was, by the twelfth section of its original charter, given the right and power to do a general banking business, and that no grant of additional powers was necessary to authorize the corporation to do such a business. That section, in full, is as follows:

"*Be it further enacted*, That the said corporation shall be capable in law of purchasing, holding, and conveying any and all kinds of estate, real, personal, or mixed, and of receiving in trust from any person, money, jewels, plate, or other valuable thing, and of giving their acknowledgment therefor in such form as the directory of said corporation may deem best suited to the protection and convenience of the depositor and the company; and the said corporation shall hereby be authorized to loan their surplus funds on any public stocks of any incorporated company, or of the United States, or either of them, or to invest them in any real or personal estate or choses in action or other good securities."

38—7 P

Obviously, this language was not used with a view of authorizing the grantee to enter upon a general banking business. The only power named which is not strictly within the scope of a successful insurance business, is that of receiving money and other valuable things in trust; and that power, as expressed, might as well have been conferred upon an insurance company as upon a bank. Certain it is that no authority is given to lend the money deposited, or to employ the capital stock of the corporation in a banking business. This authority is attempted to be conferred by the Act of 1887 alone; yet a general banking institution without such powers is an unheard-of thing.

That only an insurance business was contemplated by the original charter is shown conclusively by the corporate name and the language of the fifteenth section of the charter. That section is as follows:

" *Be it further enacted*, That the president, or in his absence the vice-president, with the cashier, shall have full power and authority to make any assurance upon any fire, marine, or river risks, or risks upon any freights, moneys, goods, wares, merchandise, or other valuable thing, or upon livestock, life, or health, and to fix the premiums therefor, and *generally to do all things necessary and proper in carrying on the general insurance business;* and all policies by them issued, when signed by the president or vice-president, as the case may be,

and countersigned by the cashier, with the seal of the company attached, shall be binding upon the corporation to the same extent a like contract can bind a natural person."

Reverse and remand.