# REELFOOT LAKE LEVEE DISTRICT *v.* DAWSON.

## (*Jackson.*    June 30, 1896.)

1. TAXATION.  *Constitutional power and its limitations defined.*

The exercise of the taxing power is a legislative function, and, under our Constitution, confined exclusively to the General Assembly, and to counties and incorporated towns authorized thereto by that body.   And, under the limitations of our Constitution, all taxation, whether by the General Assembly, or by authorized counties and incorporated towns, must be laid upon all property, not lawfully exempt, having a *situs* within the taxing jurisdiction, and according to value, not otherwise.   To impeach a revenue or other statute for unconstitutionality, it must be clearly shown to violate some specific provision of the State or Federal Constitutions.   Exemptions from taxation beyond those enumerated in the Constitution are forbidden.   (*Post, pp. 159, 160, 170.*)

Constitution construed: Art. II., Secs. 3, 28, 29.

Cases cited and approved: Marr *v.* Enloe, 1 Yer., 454; Keesee *v.* Board, 6 Cold., 130; Waterhouse *v.* Board, 8 Heis., 859; Memphis *v.* Banks, 91 Tenn., 550; Bell *v.* Bank, Peck, 269; Hope *v.* Deadrick, 8 Hum., 8; Demoville & Co. *v.* Davidson County, 87 Tenn., 220; Stratton Claimants *v.* Morris Claimants, 89 Tenn., 511; Railway Co. *v.* Wilson County, 89 Tenn., 608; Memphis *v.* Memphis City Bank, 91 Tenn., 588; Jenkins *v.* Ewin, 8 Heis., 478; Chattanooga *v.* Railroad, 7 Lea, 561; Street R. Co. *v.* Morrow, 87 Tenn., 406; Shelby County *v.* Exposition Co., 96 Tenn., 653.

2. SAME.  *Special assessments are taxes, and must conform to constitutional requirements.*

A special assessment on lands in a levee district to erect a levee for the special protection and benefit of the lands situated therein, is such a tax as falls within the constitutional requirement that taxes shall be levied upon all property according to its value.   (*Post, pp. 162–171.*)

Constitution construed: Art. II., Secs. 28, 29.

Act construed: Acts 1895, Ch. 1 (Ex. Sess.).

Cases cited and approved: Taylor *v.* Chandler, 9 Heis., 349; Nashville *v.* Berry, 2 Leg. R., 26; State *v.* Butler, 11 Lea, 419.

Reelfoot Lake Levee District *v.* Dawson.

Cited and distinguished: Mayor, etc., *v.* Mayberry, 6 Hum., 369; Washington *v.* Mayor, etc., 1 Swan, 180; White *v.* Mayor, etc., 2 Swan, 369.

3. SAME. *Of land alone.*

The levy of a tax on land alone, omitting personalty, in a certain levee district, excepting land under water, violates the constitutional requirement that all property, real, personal, and mixed, shall be taxed, and is void. (*Post, pp. 154–157, 159–162.*)

Constitution construed: Art. II., Sec. 28.

Act construed: Acts 1895, Ch. 1 (Ex. Sess.).

4. SAME. *By the acre.*

The levy of a tax on property, *in specie* or by the acre, regardless of its value, violates the constitutional requirement that all property shall be taxed according to its value, and is void. (*Post, pp. 154–157, 159–162.*)

Constitution construed: Art. II., Sec. 28.

Act construed: Acts 1895, Ch. 1 (Ex. Sess.).

5. SAME. *Public purpose.*

Taxation of property in a levee district for a levee to protect the property, is for a public purpose, because beneficial to a large community of people and also to the State. (*Post, pp. 177–179.*)

Constitution construed: Art. II., Secs. 28, 29.

Act construed: Acts 1895, Ch. 1 (Ex. Sess.).

6. SAME. *Delegation of power to tax.*

The Legislature cannot delegate to a levee district the legislative power to levy a tax under Const., Art. II., Sec. 29, authorizing it to delegate such power to counties and incorporated towns, since this impliedly excludes delegation to any other agency. (*Post, pp. 174–177.*)

Constitution construed: Art. II., Sec. 29.

Act construed: Acts 1895, Ch. 1 (Ex. Sess.).

Cases cited and approved: State *v.* Armstrong, 3 Sneed, 654; Marr *v.* Enloe, 1 Yer., 454; Waterhouse *v.* Board, 8 Heis., 859; Keesee *v.* Board, 6 Cold., 131.

7. SAME. *Distinguished from police power.*

The levy of special assessments on property benefited by a levee, is an exercise of the taxing power, and cannot be justified as an exercise of police power. (*Post, pp. 171–174.*)

Reelfoot Lake Levee District *v.* Dawson.

Cases cited: Mayor, etc., *v.* Mayberry, 6 Hum., 369; Washington *v.* Mayor, etc., 1 Swan, 180; White *v.* Mayor, etc., 2 Swan, 369; Mayor, etc., *v.* Berry, 2 Leg. R., 26; Taylor *v.* Chandler, 9 Heis., 349; State *v.* Butler, 11 Lea, 419.

8. LEVEE DISTRICTS. *Created by special law.*

A levee district may be created by special law. It is not a private corporation, and, therefore, not within the constitutional prohibition that "no corporation shall be created . . . by special law." (*Post, pp. 177–179.*)

Constitution construed: Art. XI., Sec. 8.

Act construed: Acts 1895, Ch. 1 (Ex. Sess.).

Cases cited and approved: Ballentine *v.* Pulaski, 15 Lea, 633; Williams *v.* Nashville, 89 Tenn., 490.

9. SAME. *Taxation for.*

And the General Assembly may, by direct legislation conforming to the constitutional requirement, but not by delegation of the taxing powers, provide for special assessments upon the property of a levee district for the benefit and protection of its property and inhabitants. (*Post, pp. 177–179.*)

10. STATUTES. *Unconstitutional in part.*

A statute fails *in toto* where its enforcement becomes impracticable on account of the elimination of an unconstitutional provision. (*Post, p. 179.*)

Act construed: Acts 1895, Ch. 1 (Ex. Sess.).

Cases cited: Tillman *v.* Cocke, 9 Bax., 429; Dugger *v.* Insurance Co., 95 Tenn., 247; 13 Otto, 80, 118.

---

FROM DYER.

---

Appeal from the Chancery Court of Dyer County. JNO. S. COOPER, Ch.

M. A. LOWE and LEECH & SAVAGE for Reelfoot Lake Levee District.

DEASON & RANKIN, M. M. MARSHALL, and HAR-
WOOD & TYREE for Dawson.

CALDWELL, J.   In June, 1895, the Legislature of
the State, while in extraordinary session, by special
Act created the "Reelfoot Lake Levee District,"
comprising certain territory in the counties of Lake,
Obion, Dyer, and Lauderdale, "known as a part
of Reelfoot Lake Basin of overflowed lands," and
appointed two citizens of each of those counties as
"a board of directors" therefor, to serve until
the first Monday in March, 1898, and until the
appointment and qualification of their successors; the
said board to have power to "sue and be sued,
plead and be impleaded, and have continual succes-
sion," for the purpose, and with the power and
duty of erecting and maintaining a levee sufficient
to shield and protect the territory mentioned from
recurring overflows by the waters of the Mississippi
River.   Acts 1895, Ex. Sess., Ch. 1, Secs. 1, 2,
3, and 4.

The fifth section of the Act provides for the
organization of the board, for an estimate by it of
the amount of land within the district subject to
overflow, of the length and height of the levee re-
quired for its protection, and of the probable cost
of the same, and for a submission of the question
of necessary taxation to a vote of the people of
the district; and the sixth section is as follows:

"That, for the purposes of building and main-

taining the levee aforesaid, and for carrying into effect the objects and purposes of this Act, the Board of Levee Directors shall have the power, and it is hereby made their duty, to assess and levy a contribution tax, not exceeding ten cents per acre, and two per cent. valuation tax, on all the land embraced within the said boundary of said levee district herein named; *Provided*, That the board of directors, through their president and secretary, shall notify the Sheriffs of Dyer, Lake, Lauderdale, and Obion Counties to open and hold an election at the various voting places in the parts of the four (4) counties embraced within the area, and bounded as described in the first section of this Act; and it is hereby made the duty of the said Sheriffs aforesaid, upon receiving such notice from the board of directors hereby created by this Act, to open and hold said election in the usual manner prescribed by law for popular elections, after giving not less than ten days' public notice at five (5) different public places in the overflowed district of each county named; and at the time and places named by them all the legal and qualified electors according to law, shall be entitled to vote at such election, and at such election the proposition shall be written or printed on the tickets so voted, ' For Assessment,' or ' No Assessment,' and the said Sheriffs shall make returns of the said election to the secretary of the Levee Board, and also to the Secretary of State, Nashville, Tennessee, and if it appear that three-

fourths of those voting are in favor of the assess-
ment, it shall then be the duty of said board of
directors to levy said tax for that year, and an-
nually thereafter so long as it shall be found nec-
essary to accomplish the objects of this Act."

Section 7 requires the board of directors to elect
four citizens of the district, one from each county,
to act as a board of tax assessors for the district;
and section eight requires the board of directors to
elect from the citizens of the district four tax col-
lectors, one in and for the included portion of each
county.

The twentieth section empowers the board of
directors to issue and sell long-term six per cent.
bonds, from time to time, not to exceed $700,000
in all, "to raise funds to carry out the purposes"
of the Act; and the twenty-first section is as follows:

"That for the purpose of providing for the pay-
ment of the interest on the bonds authorized by
Sec. 20, annually, and to provide a sinking fund
for their ultimate redemption, it is hereby enacted
that a tax per acre on all the lands embraced within
the boundary described in Sec. 1 of this Act (ex-
cept the area now covered by standing water of
Reelfoot Lake, and the lands outside of the levee),
sufficient in total amount to pay the interest on the
bonds issued, shall be assessed and collected annu-
ally; *Provided*, The said tax shall not exceed ten
cents per acre; *And provided further*, That an as-
sessment on the valuation of the lands, not exceed-

ing two (2) per cent., shall be assessed annually, and collected as provided for in Secs. 6, 7, and 8 of this Act, and the same shall be paid over to the treasurer of said board, giving priority to the bonds of first date.''

On November 14, 1895, the Reelfoot Lake Levee District, by and through its board of directors, and jointly with certain other persons, landowners of Lake County, filed the present bill, in the Chancery Court of Dyer County, against the Sheriff of the latter. county and other citizens thereof, some of them being election officers and others landowners and taxpayers in that part of Dyer County within the levee district.

Complainants alleged, among other things and in substance, that the board of directors, provided for by the Act, was promptly organized, and that it entered upon its duties as therein directed; that it made all requisite estimates for construction and taxation, and, thereupon, submitted to the vote of the people of the district, in the manner prescribed in the sixth section, their recommendation of a present annual tax of ten cents on the acre and of two per cent. on the value of all taxable lands within the levee district; that an election was held throughout the district upon this recommendation, on September 10, 1895, and resulted, as shown by the returns sent to the secretary of the board, in a total of 732 votes '' for assessment,'' and 632 votes for ''no assessment;'' that 497 of the votes for

"no assessment" were fraudulently cast in Dyer County by persons known not to be legally qualified to vote in that election; that counting such fraudulent and illegal ballots, the proposed taxation was defeated, and rejecting them, it was approved; and, upon these allegations, complainants prayed the Court to purge the returns from specified precincts in that county and eliminate therefrom the alleged illegal and fraudulent ballots, so that the true result might be declared and its legitimate advantages enjoyed by the people of the levee district.

The defendants, by demurrer, disputed the jurisdiction of the Court, and also impeached the Act in question as being in violation of the State Constitution in several particulars.

Chancellor Cooper, hearing the cause upon these pleadings, sustained the demurrer so far as it assailed the Act for violation of the revenue provisions of the Constitution, but overruled it as to other questions. The Act was adjudged unconstitutional, and the bill dismissed.

Complainants have appealed, and the debate of learned counsel before this Court, though embracing the whole demurrer, has been addressed chiefly to the grounds sustained by the Chancellor, one side denying and the other affirming the correctness of the decree in respect thereto.

The power of taxation is an incident of sovereignty, a prerogative coeval with the government itself, and indispensable to its perpetuity. It is es-

sentially a legislative power, and, as such, in the general apportionment of governmental powers, falls to the legislative department, under Sec. 3, Art. II., of the Constitution, which vests "the legislative authority" of the State in the "General Assembly." *Marr* v. *Enloe*, 1 Yer., 454; *Keesee* v. *The Civil District Board*, etc., 6 Cold., 130; *Waterhouse* v. *Board*, etc., 8 Heis., 859; *Memphis* v. *Bank & Insurance Cos.*, 91 Tenn., 550; Cooley on Taxation (2d Ed.), pp. 4, 41; Burroughs on Taxation, Sec. 6; 25 Am. & Eng. Enc. L., 18.

In respect of taxation, therefore, as of all other subjects of legislation, the General Assembly has full power to pass any law not in conflict with the delegated powers of the Federal Government, or with the restrictions of the State Constitution; and he who would show the unconstitutionality of tax legislation, as of other legislation, must be able to put his finger on the provision of the Constitution, Federal or State, violated thereby. *Bell* v. *The Bank*, Peck, 269; *Hope* v. *Deaderick*, 8 Hum., 8; *Demoville & Co.* v. *Davidson County*, 87 Tenn., 220; *The Stratton Claimants* v. *The Morris Claimants*, 89 Tenn., 511.

Confessedly the Act before us does not violate any provision of the Federal Constitution. The restrictions of the State Constitution on the subject of taxation, are found in Sections 28 and 29 of Article II. of the Constitution of 1870. Such parts

of those sections as it is desirable now to quote are in the following language, namely:

"SEC. 28. All property, real, personal, or mixed, shall be taxed, but the Legislature may except such as. may be held by the State, by counties, cities, or towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary, or educational, and shall except one thousand dollars' worth of personal property in the hands of each taxpayer, and the direct product of the soil in the hands of the producer or his immediate vendee. All property shall be taxed according to its value, that value to be ascertained in such manner as the Legislature shall direct; so that taxes shall be equal and uniform throughout the State. No one species of property, from which a tax may be collected, shall be taxed higher than any other species of property of the same value. . .

"SEC. 29. The General Assembly shall have power to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation purposes, respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to its value, upon the principles established in regard to State taxation." . . . .

The language of both sections is plain and positive; its meaning cannot be mistaken, nor its force evaded. Both sections are mandatory in at least two points that are urged against the present Act.

Section 28 imperatively requires (1) that all property, of whatever kind, except that mentioned for conditional and unconditional exemption, shall be taxed, and (2) that all such taxable property shall be taxed according to its value.   Section 29, though not repeating the first sentence of Sec. 28, makes the same imperative requirements; so that, whether a given tax law fall under the one section or the other, or under both of them, those requirements are equally applicable and mandatory.

In every instance, the requirement that all property (except that mentioned for exemption) shall be taxed, prohibits the Legislature from making additional exemptions (*Railway Co.* v. *Wilson County*, 89 Tenn., 608; *Memphis* v. *Memphis City Bank*, 91 Tenn., 588); and, likewise, the requirement that all such property shall be taxed according to its value, prohibits the Legislature from laying a tax on any property in specie—as, by the piece or by the acre.

Under the Constitution of 1796, lands were taxed by the hundred acres, but the Constitution of 1834, like that of 1870, contained the provision that "all property shall be taxed according to its value." This means that every property tax shall be graduated by the value of the property on which it is laid.   *Jenkins* v. *Ewin*, 8 Heis., 478; *Chattanooga* v. *Railroad Co.*, 7 Lea, 561; *Street Railroad Co.* v. *Morrow*, 87 Tenn., 406.

The sixth section of the Act before us utterly ignores the first named requirement, in that it ex-

13 P—11

pressly limits taxes therein provided for to land alone, and thereby exempts all personalty, that without as well as that within the exceptions mentioned in the fundamental law, and it also ignores the second named requirement, in that it provides for taxation mainly by the acre, regardless of value, and not exclusively according to value. Section 21 of the Act ignores both of those requirements in the same manner, and the first one additionally, in that it expressly exempts from all taxation "the area now covered by standing water of Reelfoot Lake," that area being of some value, however small, and not being otherwise exempt.

There can be no doubt, therefore, that sections 6 and 21 of the Act violate the Constitution in the particulars mentioned, if the taxation contemplated by those sections is within and subject to the aforesaid limitations of the organic law.

Complainants deny that it is within or subject to those limitations, and seek to sustain that denial, and to vindicate the Act, by the contention that the burden intended to be imposed upon the citizen is a special assessment for the benefit of his land, and not a tax for the support of the State or any county or municipality therein, and, consequently, that those limitations are inapplicable in this case. The distinction thus urged has been frequently considered by the Courts.

Judge Cooley, after referring to some of the cases on both sides of the question, says: "The

Reelfoot Lake Levee District *v.* Dawson.

fact very clearly appears that, while there is not such a concurrence of judicial opinion as would be desirable, the overwhelming weight of authority is in favor of the position that all such provisions for equality and uniformity in taxation, and for taxation by value, have no application to these special assessments. . . . . It is safe to assume, as the result of the cases, that the constitutional provisions refer solely to State taxation, or, when they go further, to general taxation for State, county, and municipal purposes; and though assessments are laid under the taxing power, and are in a certain sense taxes, yet that they are a peculiar class of taxes, and not within the meaning of that term as it is usually employed in our Constitutions and statutes. They may, therefore, be laid on property specially benefited, notwithstanding such constitutional restrictions as have been mentioned." Cooley on Taxation, 634–636.

It could serve no valuable purpose for us, at this time, to review, or even cite, the numerous adjudged cases on this vexed question. Our examination of them justifies full concurrence with Judge Cooley in the statement that the great weight of authority, for one reason and another, favors the distinction insisted upon by the complainants in this case; nevertheless, it must be confessed that the adjudications found to be in the minority are not without support in sound reasoning.

The great divergence in judicial decisions is due

in part to a substantial difference in constitutional provisions, and in part to unlike interpretations put upon similar provisions.

This Court considered the question elaborately in 1872, and ranged itself with those Courts holding what is now the minority view. It thought and held that the distinction then asserted, and now contended for—being a distinction between local assessments and taxes—was not allowable in this State; and, therefore, that local assessments according to lot frontage and not according to value, were "absolutely void," because in conflict with Sections 28 and 29 of Article II. of the Constitution, which require that all taxes shall be equal and uniform according to value. *Taylor, McBean & Co.* v. *Chandler*, 9 Heis., 349.

That construction was approved in the case of *Nashville* v. *Berry*, 2 Leg. R., 26 (1877), and in that of the *State* v. *Butler*, 11 Lea, 419 (1883); and has in no instance been departed from.

We have been able to find no decision of this Court, prior or subsequent, in conflict with that construction.

In 1845 it was decided, in the case of *Mayor*, *etc.*, v. *Mayberry*, 6 Hum., 369, that the Legislature might lawfully authorize the passage of a municipal ordinance requiring lot owners to construct suitable sidewalks along the street in front of their property at their own expense, and, in case of default, to pay to the corporation the cost of having

the same done for them, although the burdens imposed thereby were not equal and uniform as to value, and were not intended to be so; but the ordinance involved in that case was sustained as a legitimate police regulation, and not as a piece of tax legislation.

Referring to the ordinance, Judge Green, speaking for the Court, said: "We do not think that this law levies a tax. A tax is a sum which is required to be paid by the citizen annually, for revenue for public purposes. But this ordinance levies no sum of money to be paid by the citizens. It requires a duty to be performed for the well-being and comfort of the citizens of the town. It is in the nature of a nuisance to be removed. . . . . The ordinance in question is, therefore, not unconstitutional on the ground of being an unequal tax." 6 Hum., 372.

That ruling was followed in *Washington* v. *Mayor, etc.*, 1 Swan, 180; in *White* v. *Mayor, etc.*, 2 Swan, 369; and in *Mayor, etc.*, v. *Berry*, 2 Leg. R., 26.

The last-named case, which was decided in 1877, refers to and approves the case of *Taylor, McBean & Co.* v. *Chandler*, 9 Heis., 349, decided five years earlier; and this 9 Heiskell case approves the 6 Humphreys and the 1 Swan cases, *supra*, saying, however, that they should not be extended.

Coming back to the language of our Constitution, which, after all, must be controlling, we can entertain no other opinion than that the limitations of

---
---

Sec. 28 of Art. II. apply equally and alke to every kind of taxes that the Legislature has the power to levy, whether they be levied for the support of the State government, as such, in the strict sense, or more especially for the benefit of particular governmental agencies or instrumentalities, duly ordained for the accomplishment of authorized local ends.

They apply to all taxes in which the State has either a direct or indirect interest; and if an exaction be made of a citizen for an object in which the State is entirely without an interest, that exaction is not taxation, whatever it may be called. Such an exaction cannot be justified by the assertion that it flows from an exercise of the taxing power of the government. To come within that power, the demand upon the citizen must be made for a public purpose; and, in order that a purpose be public, it must include some advantage to the State in the aggregate, or in some one of its counties, incorporated towns, or other authorized governmental agencies or instrumentalities. If the purpose be exclusively private, then it is totally foreign to the taxing power.

"It is the first requisite of lawful taxation that the purpose for which it is laid shall be a public purpose." Cooley on Taxation, 55.

Every legitimate function of the taxing power of the government is embraced in the word taxation; and all legitimate taxation is embraced in that provision of the Constitution. Likewise, every exaction without that provision is without that power.

Reelfoot Lake Levee District *v.* Dawson.

"Tax" and "taxes," in their most comprehensive sense, and without qualification, are the words employed by the framers of the Constitution. These words, in their usual and general sense, include every burden that may be lawfully laid upon the citizen by virtue of the taxing power, and they must be so interpreted in the absence of anything showing them to have been used with a different meaning. Constitutions must receive the same interpretation, in this respect, as other written instruments and laws.

Judge Story, speaking on this subject, said: "In the first place, then, every word employed in the Constitution is to be expounded in its plain, obvious, and common sense meaning, unless the context furnishes some ground to control, qualify, or enlarge it. Constitutions are not designed for metaphysical or logical subtleties, for niceties of expression, for critical propriety, for elaborate shades of meaning, or for the exercise of philosophical acuteness or judicial research. They are instruments of a practical nature, founded on the common business of human life, adapted to common wants, designed for common use, and fitted for common understandings. The people make them, the people adopt them, the people must be supposed to read them with the help of common sense, and cannot be presumed to admit in them any recondite meaning or any extraordinary gloss." Story on Const., Sec. 451.

No words of exception or exclusion, as to the

purpose of any tax, are to be found in our Constitution. Words of exception and exclusion are used, but they relate alone to the property that may be and that shall be exempt from taxation altogether. The requirement that all property, except that exempt, shall be taxed, embraces every tax that may be legitimately levied; and the requirement that all taxable property shall be taxed according to its value, likewise embraces every legitimate tax. These requirements apply in every case, whether the tax be general or special. In like manner the direction that certain specified property shall be exempt from taxation, and that certain other property may be exempt in the discretion of the Legislature, refers alike to each and every tax.

If it be true that special assessments, as contradistinguished from general taxes, are not within the aforesaid requirements of equality and uniformity of taxation and of taxation by value, it must be equally true that they are not within the direction as to exemption, and, in the latter event, they may include the whole of the taxpayer's personalty at full value, not deducting $1,000 therefrom nor excluding the direct product of the soil; and they may also include all property held for public, religious, charitable, scientific, literary, and educational purposes, and that, too, in the face of the direction that the first two items shall be, and the others may be, and are universally, exempted from general taxation. Special assessments are entirely within or

entirely without the provisions of Sec. 28 of Art. II., of the Constitution. If the former, then they are subject to the same requirements as general taxes; and, if the latter, then they are not subject to any of those requirements, and may rightfully be laid on property exempted from general taxes—such as the taxpayer's first $1,000 worth of personalty, the direct product of the soil in the hands of the producer or his immediate vendee, churches, schoolhouses, town halls, courthouses, asylums, and even the statehouse itself, when within the territory contemplated.

It is no answer to the latter suggestion to say that special assessments should be confined to the property especially benefited, for if they be not subject to those provisions, there is nothing to prevent the inclusion of all property, that exempt as well as that not exempt, from other taxation.

It is not believed that the framers of the Constitution intended to restrict one kind of taxes and not another kind, or that they intended to discriminate in favor of special assessments and against general taxation; nor is it believed that they constructed an instrument susceptible of such an interpretation. They included all taxes and excluded none.

Construing Sec. 28, Art. II., of the Constitution, in a case involving a claim of exemption from taxation, this Court recently said: "This provision comprehends the whole domain of taxation, and in explicit terms prescribes the maximum of exemptions,

beyond which the Legislature may not go. It de-
clares what property may be, and what shall be,
excepted from taxation, and directs that all the rest
shall be taxed. By that mandatory direction the
Legislature is prohibited from making any other ex-
emptions from taxation, upon any ground or consid-
eration whatever; 'and if it attempt to do so the
effort is unavailing and void for want of legislative
power.'" *Memphis* v. *Memphis City Bank*, 91
Tenn., 588.

It was truly said in that case that the particular
section of the organic law under consideration there
and here "comprehends the whole domain of taxa-
tion." The next section (29), however, expressly
empowers the General Assembly "to authorize the
several counties and incorporated towns in this State
to impose taxes for county and corporation purposes
respectively."

The latter section relates alone to taxes laid for
county and municipal purposes, and covers the whole
domain of county and municipal taxation, so far as
the same shall be delegated. *Waterhouse* v. *Board,*
*etc.*, 8 Heis., 857 (S. C., 9 Bax., 398); *Shelby
County* v. *Tennessee Centennial Exposition Co.*, 96
Tenn., 653. And, under it, as under Sec. 28, the
requirements with respect to equality and uniformity
of taxation, and as to taxation according to value,
must be observed (*Taylor, McBean & Co.* v. *Chan-
dler*, 9 Heis., 368), and all proper exemptions made,
each county and each town acting for itself, and not

Reelfoot Lake Levee District *v.* Dawson.

being in any degree constrained or controlled by what any other county or town may have done or may do.

Taxes laid primarily for the State, must be laid on all non-exempt property according to value, so as to make them equal and uniform throughout the State; and taxes laid primarily for county, municipal, or other authorized local purposes, must be laid on all non-exempt property according to value, so as to make them equal and uniform throughout the more restricted territory to be especially benefited thereby.

It is perfectly manifest that the present Act does not fall within Sec. 29, because the Reelfoot Lake Levee District is in no sense either a county or an incorporated town. All taxes that are leviable at all, except those authorized to be levied by counties and incorporated towns respectively, must, undoubtedly, be levied by the Legislature; and all taxes levied by the Legislature must, as certainly, be levied with reference to the restrictions of Sec. 28. It follows, therefore, that if a levy of taxes for the benefit of the Reelfoot Lake Levee District be permissible at all, it must be made by the Legislature, and subject to those restrictions. Whether taxes for such an object be allowable in any case will be considered hereafter.

Complainants contend, in the next place, that if the Act be not sustainable under the taxing power, it can be, and should be, sustained under the police

power of the State. This latter power, like the
former one, is an attribute of sovereignty; and it
may rightfully have expression in the form of legis-
lation, whenever needful for the promotion of public
health, or the preservation of public safety, order,
or well-being. Rules and regulations established in
the proper exercise of this power often require the
payment of money for certain specified objects, and
thereby, in some measure, partake of the nature of
tax laws, though in primary purpose entirely distinct
from them.

"The distinction between a demand of money
under the police power, and one made under the
power to tax, is not so much one of form as of
substance. The proceedings may be the same in the
two cases, though the purpose is essentially different.
The one is made for regulation and the other for
revenue. If, therefore, the purpose is evident in any
particular instance, there can be no difficulty in
classifying the case and referring it to the proper
power. . . . . Only those cases where regula-
tion is the primary purpose, can be specially referred
to the police power." Cooley on Tax., 586, 587.

Obviously, the burden intended to be laid on the
property of the citizen, by the Act under considera-
tion, is not primarily for regulation; ·but, on the
contrary, revenue is the primary and greatly pre-
ponderating purpose, if not indeed the exclusive pur-
pose, in the legislative mind. The paramount and
controlling idea, disclosed in every part of the Act,

is to raise a fund with which to reclaim from frequent inundations a large body (some 300,000 acres) of land in the Mississippi Valley, and thereby enhance its value and the wealth of its owners. Strictly speaking, it is without an element or feature of regulation. The health of the people in that locality might be somewhat improved, and even life itself might be saved occasionally, by the construction of the contemplated levee and the consequent prevention of periodical overflows; but those are the most remote of the benefits to be anticipated from such a work, and were likely not thought of by the members of the General Assembly.

Without further enlarging upon the subject, we hold, unhesitatingly, that this legislation is in no sense referable to the police power of the State, and that it cannot be justified thereunder. It does not fall within the reason of *Mayor*, etc., v. *Mayberry*, 6 Hum., 369; *Washington* v. *Mayor*, etc., 1 Swan, 180; *White* v. *Mayor*, etc., 2 Swan, 369, and *Mayor*, etc., v. *Berry*, 2 Leg. R., 26, before mentioned, but rather within that of *Taylor, McBean & Co.*, v. *Chandler*, 9 Heis., 349, and *State* v. *Butler*, 11 Lea, 419, before mentioned. The former cases ruled that the municipal ordinances therein considered were in the nature of regulations for the removal and prevention of nuisances along the sidewalks, and were, therefore, within the police power of the State; and the latter cases ruled that the special assessments there involved were for mu-

nicipal purposes in the general sense, and therefore within the taxing power.

The Act is unconstitutional for the further reason that the Legislature attempts, thereby and therein, to delegate a portion of the taxing power to the Reelfoot Lake Levee District, without express authorization so to do.

It has already been seen that the power of taxation is essentially legislative, and, that being so, it fell to the legislative branch of the government in the organic division of governmental powers. Such being the case, that branch, and that branch alone, is authorized to levy taxes in the first instance, and it can delegate its power to do so only to the extent expressly stated in the twenty-ninth section of Article II. of the fundamental law—that is, to the extent of authorizing counties and incorporated towns to levy taxes for county and corporation purposes, respectively.

No department of the government can resign or abdicate any of its distinctive and essential powers to another department; and much less to a mere subdivision or inferior agency, unless expressly authorized by the organic law itself. *State* v. *Armstrong*, 3 Sneed, 654.

"It is a general rule of constitutional law that a sovereign power conferred by the people upon any one branch or department of the government is not to be delegated by that branch or department to any other. This is a principle which pervades

our whole political system, and, when properly under-
stood, admits of no exception.   And it is applicable
with peculiar force to the case of taxation.'' Cooley
on Taxation, 61; 8 Heis., 859.

The mere apportionment of sovereign powers
among the three co-ordinate branches of the State
government, without more, imposed upon each of
those branches the affirmative duty of exercising its
own peculiar powers for itself, and prohibited the
delegation of any of those powers, except in cases
expressly permitted. · Such was the interpretation of.
the Constitution of 1796,. under which an act au-
thorizing County Courts to levy taxes for county
purposes, and also another Act authorizing a navi-
gation tax in a collection. of designated river counties,
were adjudged to be unconstitutional and void, because
that instrument did not in terms empower the Legis-
lature to confer such authority upon County Courts.
*Marr* v. *Enloe*, 1 Yer., 452.

That case was decided at the close of the year
1830, and must have been well known to the dele-
gates composing the convention that framed the Con-
stitution of 1834.   That '' convention had the power
to abrogate the rule [of construction announced and
applied in that case] totally, or to subject it to
partial modifications.   It chose the latter, and au-
thorized the Legislature to delegate the power of
taxation to the counties and incorporated towns.
This was done by the twenty-ninth section of the
second article of the Constitution [then framed and

subsequently adopted]. The convention did not mean to go further. The implication is irresistible that the expression of the authority to delegate the power to the counties and towns is an absolute exclusion of authority to delegate the power to any other agency. It is impossible to doubt that the convention designated the counties and incorporated towns, and authorized the power to be conferred on them, for the reason that, without such designation, the power of taxation would be restricted to the Legislature only." *Keesee* v. *The Civil District Board, etc.,* 6 Cold., 131.

That provision of the Constitution of 1834 was copied literally into the Constitution of 1870, without any further modification; and it must be presumed to have been so copied with the understanding and intent that the whole of the taxing power should remain in the Legislature, except that part expressly authorized to be delegated. 8 Heis., 859; 9 Heis., 372.

The particular feature of the Act that is most objectionable as a delegation of taxing power is that in which the levee district is authorized to decide for itself what rate of taxation, if any, shall be laid annually—only the maximum rate being prescribed. The Legislature, before passing the law, should have determined at least three things: (1) that the purpose in view was a proper purpose for taxation, (2) the annual rate required for the present, and (3) the rule under which it should be

levied. These matters are within the legislative function, and cannot be delegated in the absence of express authority of the fundamental law. Such questions may be left to counties and incorporated towns in respect of their own taxes, and within proper limitations; but that is so because the General Assembly is expressly empowered to grant them that authority. No other agency or instrumentality of the government can be given such power.

Had the Legislature adequate power to create, by special law, such an agency or instrumentality as that set forth in the Act before us? We have been able to discover no good and valid reason why it had not. The intended creature was clearly not a private corporation, and, consequently, could not have been within the prohibition (Const., Art. XI., Sec. 8), that · "no corporation shall be created . . . . by special law." *State* v. *Wilson*, 12 Lea, 246; *Ballentine* v. *Pulaski*, 15 Lea, 633; *Williams* v. *Nashville*, 89 Tenn., 490.

Nor, indeed, was it to be a corporation at all. It could have been but an inferior agency or instrumentality of the State, in the nature of a taxing district, designed to reclaim and perpetually protect about 300,000 acres of land in the northwestern corner of the State, rich and of great value but for the periodical overflows to which it is subjected by the high waters of the Mississippi River. The accomplishment of such an object would greatly benefit the numerous owners of the soil, and thereby

13 P—12

enhance the resources of the State and enlarge her wealth and population.

The owners, who would have to bear the burden of reclamation and continued protection, would naturally and justly receive the greatest and most direct benefit; nevertheless, the State would be benefited in the important respects just mentioned. Her general revenues would be increased, not by reason of her receipt of any part of the taxes to be raised under the special Act, but because the taxable value of the lands reclaimed and protected would be increased, and the general taxes thereon correspondingly enlarged.

The exaction made of the citizens of the district for such an object would be of a public nature, and therefore within the taxing power. It would be for a public purpose in a twofold sense, (1) because beneficial to a large community of people within the district, and (2) because beneficial to the State in the particulars already indicated. The taxes to be raised by and for such an agency or instrumentality, however, would be subject to the same requirements as are taxes levied for State, county, and municipal purposes, under Sections 28 and 29 of Article II. of the Constitution.

The creation of levee districts has been adjudged to be within the legislative power in Arkansas (*Keel* v. *Board, etc.,* 27 S. W. R., 590), in Louisiana (Draining Co. case, 11 La. Ann., 388), in Mississippi (*Daily* v. *Swope,* 47 Miss., 367), in Missouri (*Egyptian Levee Co.* v. *Hardin,* 27 Mo.,

495), in Wisconsin (*Donelly* v. *Decher*, 17 N. W.
R., 389), and in other States; and the creation of
irrigation districts has been held to be within that
power in California (*Hager* v. *Supervisors*, 47 Cal.,
222, and *Turloch Irrigation District* v. *Williams*, 18
Pac. R., 379), and perhaps in other States.

It is said by Judge Cooley that "taxing districts
may be as numerous as the purposes for which taxes
are levied." Cooley on Tax., 151.

It is not every act with unconstitutional provis-
ions that must fail *in toto*. If, notwithstanding and
without such provisions, there be left enough for a
complete law, capable of enforcement and fairly an-
swering the object of its passage, the Courts will
reject only the void parts and enforce the residue.
Cooley's. Const. Lim., 215, 216; *Field* v. *Clark*,
143 U. S., 649; *Baldwin* v. *Franks*, 120 U. S.,
679; *Allen* v. *City*, 103 U. S., 80; *Railroad* v.
*Schutte*, *Ib.*, 118; *Tillman* v. *Cocke*, 9 Bax., 429;
*Dugger* v. *Insurance Co.*, 95 Tenn., 247.

We regret that the Act before us is not sus-
ceptible of such division and enforcement. Take
out the taxing feature, and the Act is completely
emasculated. A levee district without a levee, or
the means of constructing one, is a creature without
force or power to exist.

Since the bill of complainants must inevitably fail,
for reasons already stated, it is entirely unnecessary
to determine, or even consider the question of juris-
diction.

Affirm the decree and dismiss the bill.